WELLER, Appellee,

v.

WELLER, Appellant.

[Cite as *Weller v. Weller* (1996), 115 Ohio App.3d 173.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–95–388.

Decided Nov. 1, 1996.

174

*Michael D. Portnoy*, for appellee.

*Walter J. Skotynsky*, for appellant.

*Per Curiam.*

This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, which amended a qualified domestic relations order ("QDRO"). From that judgment, defendant-appellant, Linda S. Weller, assigns the following as error:

"First Assignment of Error:

"The trial court erred in granting appellee's motion to amend the qualified domestic relations order.

"Second Assignment of Error:

"The decision of the trial court amending the qualified domestic relations order was contrary to law and against the manifest weight of the evidence.

"Third Assignment of Error:

"The trial court erred in not striking appellee's post-hearing brief as untimely."

The relevant facts of this case are as follows. Plaintiff-appellee, Kenneth V. Weller, and appellant were married on March 8, 1965. No children were born as issue of the marriage. On April 5, 1993, the parties filed a petition for a dissolution of their marriage. Attached to the petition was a "Separation Agreement and Property Settlement" which had been signed by both parties. Included in the separation agreement and property settlement was the following provision under the "PERSONAL PROPERTY" heading:

*"PENSION ACCOUNTS:* The parties agree to divide equally the payments from Jeep Corporation from Husband's pension plan in the form of a Qualified Domestic Relations Order to be filed after the dissolution of the marriage between these parties, conveying to each party one-half (1/2) of the total sums therein at the time of distribution, with the first payment to commence on 4/1/93. In the event that distributions are forthcoming before the QDRO is placed into effect, Husband shall pay directly to wife, a sum equal to one-half (1/2) of his net distribution he receives monthly on and after 4/1/93 and continuing thereafter until a Qualified Domestic Relations Order is filed with this court and takes effect."

Also attached to the petition for dissolution were the appropriate schedules. Schedule I indicated that appellee was retired and Schedule IV indicated that appellee received $1,440 per month in pension benefits. It did not distinguish between temporary and basic vested benefits.

On June 22, 1993, the lower court entered a decree of dissolution, dissolving the parties' marriage contract and incorporating the terms of the separation agreement and property settlement. Thereafter, on August 3, 1993, the QDRO was

signed by the court, and both parties and filed in the court below. The QDRO named the plan participant as Kenneth Weller and the alternate payee as Linda Weller. Paragraph E of the QDRO then provides:

"The benefit to be paid from the Plan to the alternate payee pursuant to the participant's assignment of benefits, in compliance with Sections 401(a)(13) and 414 of the Internal Revenue Code of 1986, as amended (hereinafter referred to as 'the Code'), shall be fifty percent (50.0%) of the *basic vested monthly pension benefit* accrued by the participant as of June 22, 1993." (Emphasis added.)

Neither the dissolution decree nor the QDRO was appealed or challenged. Moreover, in a letter dated September 1, 1993, R.D. Gurdak, Chrysler Corporation's manager of benefit services, notified appellee's dissolution attorney, Jude Aubry, that he had reviewed the QDRO and determined that it complied with the Retirement Equity Act of 1984. He then indicated that the QDRO would be implemented for initial payment to the alternate payee commencing on October 1, 1993. In a letter dated September 23, 1993, appellant was notified by R. Sarzyenski, the employee benefits administrator of Chrysler Corporation, that she was eligible to receive $857.29 of appellee's monthly pension benefit.

Subsequently, appellee received a letter, dated September 27, 1993, from R. Sarzyenski. That letter stated in relevant part:

"Pursuant to the QDRO, Ms. Linda S. Weller is eligible to receive 50% of the basic vested monthly pension benefit accrued as of June 22, 1993. Unfortunately, the QDRO language does not specify that the alternate payee is assigned 50% of only the monthly Basic Pension, nor does it specifically exclude the Temporary Pension in its assignment of benefits to Ms. Weller.

"Consequently, in compliance with the provisions of the Retirement Equity Act (REA) of 1984, the entire accrued pension benefit was included in the calculation of the alternate payee's portion of your pension benefit.

"In order to adjust the portion of pension benefit to be paid to the alternate payee, you must submit an amended QDRO that specifically names the monthly Basic Pension benefit as the only benefit to be considered and to specifically exclude the monthly Temporary Pension benefit, as well."

Appellee took no immediate action in response to this letter. However, a letter from attorney William C. Kimmelman to Mr. Gurdak dated September 29, 1993 reads:

"I am sending this letter to confirm a telephone conversation with one of your employees on Monday concerning the above matter. To bring you up to date, Mr. Weller received a letter from R. Sarzyenski of your company, dated September 23, 1993, setting forth how his pension benefits were to be divided pursuant to the QDRO. However, the letter stated that both his 'Basic' and his

'Temporary' benefits were to be divided. This is not how the benefits were divided by the QDRO. The QDRO states the [*sic*] only the Basic benefit was to be divided.

"Your employee stated that she noticed the error and would take care of the same. I would request that you insure that the correction is made."

The record does not indicate what action, if any, was taken by appellee or Chrysler Corporation after this correspondence.

On June 29, 1995, approximately twenty-one months after receiving the letter dated September 27, 1993, appellee filed a motion to amend the QDRO. Appellee requested that the QDRO be amended to specifically allow appellant one-half of appellee's basic pension benefit only. The case proceeded to a hearing before the lower court, although a transcript of that hearing has not been filed for appellate review. The parties agree, however, that at the conclusion of the hearing, the court ordered the parties to simultaneously file posthearing briefs within thirty days of the date of the hearing, *i.e.*, by November 11, 1995. Appellant filed her brief on November 9, 1995. Appellee, however, did not file his brief until November 15, 1995. In a reply brief, appellant asked that the court strike appellee's brief as untimely filed. On November 28, 1995, the lower court filed its judgment entry finding the motion to amend well taken. Initially, the court indicated that it had reviewed both posthearing briefs in detail. The court then ordered that as of August 3, 1993, appellant was entitled to receive fifty percent of appellee's "*basic vested* benefit pension plan from Chrysler Corporation." The court further concluded that as a result of appellant also receiving fifty percent of appellee's temporary pension plan in violation of the parties' original QDRO, appellant had been overpaid in the amount of $5,637.06. It is from this judgment that appellant appeals.

We will first address the third assignment of error, in which appellant asserts that the trial court erred in not striking appellee's posthearing brief as untimely. Appellant contends that per the lower court's order, the briefs were to be filed simultaneously within thirty days of the October 12, 1995 hearing. Accordingly, appellant asserts that the briefs were due by November 11, 1995, which was a Saturday. Appellant filed her brief on November 9, 1995 and appellee filed his brief on November 15, 1995. Appellant argues that appellee purposefully delayed filing his brief "in order to subvert [the] integrity of the proceedings."

The court below expressly stated in its judgment entry of November 28, 1995 that it had reviewed both posthearing briefs in detail. Therefore, the court overruled appellant's motion to strike. The granting or denial of a motion to strike is a matter within the sound discretion of the trial court. See, generally, *Perry v. Moreland Hills* (Dec. 14, 1989), Cuyahoga App. Nos. 56413 and 56414,

unreported, 1989 WL 150994, and *Bosso v. Ohio Bur. of Emp. Serv.* (Mar. 18, 1988), Portage App. No. 1793, unreported, 1988 WL 34059. Because the filing deadline, November 11, 1995, fell on a Saturday, appellee had until the following Monday, November 13, 1995 to file his brief. However, he filed the brief on November 15, 1995, two days late. Upon review, we cannot conclude that the trial court's allowance of the untimely filing was so arbitrary, unreasonable or unconscionable as to constitute an abuse of discretion. The third assignment of error is therefore not well taken.

In her first assignment of error appellant asserts that the trial court erred in granting appellee's motion to amend the QDRO because the court did not have jurisdiction to modify the parties' agreed property division, which was incorporated into the final judgment of dissolution.

It is well settled that pension and retirement benefits are marital assets subject to division upon a divorce or dissolution. *Hoyt v. Hoyt* (1990), 53 Ohio St.3d 177, 178, 559 N.E.2d 1292, 1294–1295. In order to divide such assets, however, the domestic relations court must enter what is known as a QDRO. A QDRO "creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan * * *." Employee Retirement Income Security Act of 1974 ("ERISA"), Section 206(d)(3)(B)(i)(I) and Section 414(p)(1)(A)(i), Title 26, U.S.Code. "Under Section 414(p)(8), Title 26, U.S.Code, the former spouse is an alternate payee and thus, is considered to be a beneficiary, and not a participant under the plan." *Hoyt, supra*, 53 Ohio St.3d at 180, 559 N.E.2d at 1296. Moreover, the QDRO must specify "(1) the name and last known mailing address of the participant and each alternate payee covered by the order, (2) the amount or percentage of the participant's benefit to be paid by the plan or the manner in which such amount or percentage is to be determined, (3) the number of payments or the period to which the order applies, and (4) each plan to which the order applies." *Id.* at 180, 559 N.E.2d at 1296, fn. 9, citing Section 206(d)(3)(C)(i) through (iv), Title 26, U.S.Code. Because a QDRO is essentially a mechanism through which marital property is allocated, it cannot be subsequently modified unless the domestic relations court expressly reserves jurisdiction to so modify. *Schrader v. Schrader* (1995), 108 Ohio App.3d 25, 669 N.E.2d 878. Nevertheless, a court can, pursuant to R.C. 3105.65, enforce a decree of dissolution and, "[w]here there is confusion over the interpretation to be given to a particular clause, the trial court in enforcing the agreement has the power to hear the matter, clarify the confusion, and resolve the dispute." *In re Dissolution of Marriage of Seders* (1987), 42 Ohio App.3d 155, 156–157, 536 N.E.2d 1190, 1192.

The present case presents a situation in which there exists confusion over the meaning of the QDRO as it relates to the parties' separation agreement. The separation agreement stated that the parties were to divide equally the payments from appellee's pension plan and specified that the QDRO was to convey to each party one-half of the total sums of the pension plan at the time of distribution. The QDRO, however, expressly stated that appellee was to receive fifty percent of the basic vested monthly pension benefit. Neither the separation agreement nor the QDRO addressed the issue of temporary benefits. After it became clear to appellee that Chrysler Corporation had calculated appellant's share of the benefits by including the amount of his temporary benefits, he notified Chrysler through his attorney in the letter of September 29, 1993. Thereafter, however, apparently no action was taken by Chrysler or appellee to correct the problem until appellee filed the motion to amend on June 29, 1995.

In our view, and despite the court's use of the term "amend," that motion was construed by the trial court as a motion to clarify. That is, the court resolved the discrepancy between the separation agreement and the QDRO in light of the fact that appellee was receiving both temporary and basic pension benefits. Again, "a trial court may clarify disputed terms of a separation agreement as they relate to a division of such property. Where the disputed clause in the agreement is subject to more than one interpretation, that is, is ambiguous, the court has broad discretion in clarifying the ambiguous language by considering not only the intent of the parties but also the equities involved." In re Avers v. O'Boyle (Sept. 23, 1994), Ottawa App. No. 93OT061, unreported, 1994 WL 518134, citing Bond v. Bond (1990), 69 Ohio App.3d 225, 228, 590 N.E.2d 348, 349–350. Accordingly, the trial court had jurisdiction to revisit the issue of the pension benefits and to clarify the meaning of the QDRO and separation agreement. The first assignment of error is therefore not well taken.

In her second assignment of error, appellant asserts that the decision of the trial court was against the manifest weight of the evidence. "An interpretive decision by the trial court cannot be disturbed upon appeal absent a showing of an abuse of discretion." Bond, supra, 69 Ohio App.3d at 228, 590 N.E.2d at 350. No transcript of the hearing before the lower court was submitted for our review. "The duty to provide a transcript for appellate review falls upon the appellant. * * * When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings and affirm." Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197, 199, 15 O.O.3d 218, 220, 400 N.E.2d 384, 385. Accordingly, we must assume that the evidence presented at the hearing supported the trial court's conclusion that the original

intent of the parties was to divide only the basic monthly pension benefits and not the temporary benefits. Therefore, we cannot say that the trial court abused its discretion in clarifying the QDRO, and through that the separation agreement, and the second assignment of error is not well taken.

On consideration whereof, the court finds that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is affirmed. Appellant is ordered to pay the court costs of this appeal as provided in App.R. 24.

*Judgment affirmed.*

GLASSER and SHERCK, JJ., concur.

ABOOD, J., dissents.