DECISION AND JUDGMENT ENTRY
When the Athens County Court of Common Pleas granted a divorce to Linda and Randy McKinley in 1995, it ordered the marital home sold and the proceeds divided. Because Randy had borrowed over $16,000 from Linda prior to marriage, the court ordered that part of Randy's share of the proceeds would be paid to Linda to satisfy this obligation. The proceeds from the sale, however, were insufficient to allow full repayment of Randy's premarital loans. The court therefore ordered Randy to pay the remaining amount to Linda. Randy appeals and assigns a single error for our review:
 "The trial court committed prejudicial error by improperly modifying the property division judgment contained in the final divorce decree in this matter since the trial court did not have continuing jurisdiction of the property division issue."
Because we find that the trial court properly exercised its jurisdiction to interpret and enforce its divorce judgment, we affirm.
 I.
Linda and Randy cohabited for seven years before marrying in August 1994. Later that month, the parties moved to a home in Naples, Florida. Linda had placed a $5,000 deposit on the house before the marriage; the couple paid $30,500 as a down payment and secured a mortgage for the remainder of the purchase price after the date of marriage.
Just four months after moving to Florida, Linda returned to Ohio after she and Randy experienced marital problems. She sued for divorce in May 1995 after less than one year of marriage. Randy filed an answer and counterclaim for divorce, and the case was referred to a magistrate. The only disputed issues relevant to this appeal concerned the disposition of the marital home in Naples, Florida, and $16,358.69 that Randy allegedly borrowed from Linda prior to the marriage.
The magistrate rendered a decision containing findings of fact, conclusions of law, and recommendations to the court. Among the magistrate's findings was that Randy borrowed a total of $16,358.69 from Linda prior to the marriage. Most of the total loan amount went toward payment of Randy's various preexisting debts, including $6,227.52 owed on a Harley-Davidson motorcycle. The magistrate determined that Linda made these loans to "clear [Randy's] credit record so the parties could complete the purchase of the house in Florida." Even though Randy later sold the Harley-Davidson motorcycle for $15,000, he did not repay Linda for any of the loans.
The magistrate also found that both Linda and Randy had contributed their separate property to the down payment on the Florida house. Linda traced $20,250 of her separate funds to the house, while Randy had contributed $l5,250 of his separate monies. The magistrate allocated these amounts as the parties' separate property and concluded that any equity in the house was a marital asset. See Nine v. Nine (Mar. 1, 1995), Summit App. No. 16625, unreported (noting that when parties invest separate and marital funds, house is partly separate property and partly marital property). The magistrate also found that the house's equity value was approximately $39,000.
Based on her factual findings and conclusions of law, the magistrate recommended that the parties be granted a divorce. As for the property division, the magistrate concluded that it would be equitable to have Defendant [Randy] repay the premarital loans made to him * * * by Plaintiff [Linda] prior to the date of marriage." To achieve an equitable distribution, the magistrate recommended that "the Florida residence be sold and the first $36,608.69 * * * of proceeds, after payment of sale costs, be paid to [Linda]." The magistrate broke down the $36,608.69 into three components: $20,250 represented Linda's separate-property contribution to the down payment made after the marriage; $5,000 represented the deposit Linda paid from her separate funds before the marriage; and $16,358.69 represented the loans made by Linda to Randy before the marriage. The magistrate also recommended that any remaining proceeds from the house sale be divided equally between the parties.
Neither party filed objections to the magistrate's proposed decision. The trial court adopted the magistrate's recommendations and entered judgment accordingly. Just as the magistrate proposed, the court's judgment entry ordered the Florida house sold "and the first $36,608.69 in proceeds, after costs of sale are paid, be distributed to [Linda] with any remaining proceeds divided equally between the parties * * *." The court attached the magistrate's proposed decision to its judgment and ordered that "all other provisions and recommended orders of the Magistrate are hereby adopted into this Decree of Divorce * * *." Neither party appealed from the final divorce decree.
Nearly eighteen months after entry of the final divorce decree, Linda filed a document with the court styled as an "Application for Post Judgment Relief." The application stated that the sale of the Florida house recovered net proceeds of only $23,046.68, considerably less than the $39,000 anticipated when the court entered the final divorce decree. Linda prayed for a "deficiency judgment" to compensate her for the shortfall. The magistrate conducted a hearing on Linda's application and determined that the court had jurisdiction to "enforce or implement the rights secured by" the divorce judgment. The magistrate decided that the court's award of "the first $36,608.69 in sale proceeds" from the Florida house was based on the assumption that the house had an equity value of $39,000. The magistrate did not, however, award Linda the full $12,807.66 "deficiency" prayed for in the application. Instead, she recommended that Linda be granted a "deficiency judgment" of only $4,831.[1] Both parties filed objections to the magistrate's report. The trial court declined to adopt the magistrate's calculations and instead ruled that Linda was entitled to the full $12,807.66 "deficiency" prayed for in her application.
Nearly one year later, Randy filed a Civ.R. 60 (B) motion for relief from judgment. The motion asked the court to vacate the "deficiency judgment" for $12,807.66. Randy's motion reasoned that the entry of a "deficiency judgment" constituted an unauthorized modification of the final divorce decree. The trial court vacated the judgment but, in doing so, rejected Randy's argument. The court noted that it had "continuing jurisdiction to address the issue of the shortfall in sale proceeds and the resulting request for a deficiency judgment" and therefore did not err by exercising jurisdiction over Linda's application. However, the court recognized that it erred in calculating the amount of the deficiency and therefore vacated its previous "deficiency judgment." Because of the computation error, the court granted the Civ.R. 60 (B) motion and ordered a new hearing on Linda's application, limited to a determination concerning the amount owed by Randy.
After a re-hearing on Linda's application, the magistrate again recommended that Linda be granted a "deficiency judgment" against Randy. In doing so, the magistrate explained what the final divorce decree had decided:
 The down payment for the purchase of the house had consisted of two payments made by [Linda], one in the amount of $5,000.00 and another in the amount of $15,250.00, and a payment of $15,250.00 made by [Randy]. Thus, [Linda] provided fifty-seven (57) percent of the down payment from her separate funds and [Randy] provided forty-three (43) percent from his separate funds. During the marriage, [Linda] loaned [Randy] $16,358.69 from her separate funds, a loan which was not repaid during the marriage. Testimony presented by both parties at the final hearing indicated that the house had equity of at least $39,000.00. In the Decree of Divorce, the Court ordered the Florida residence sold and awarded [Linda] the first $36,608.69 of the net proceeds. The Court arrived at this figure by adding together [Linda's] $20,250.00 contribution to the down payment and the amount of the unpaid loan, $16,358.69. In so doing, the Court was implicitly acknowledging that [Randy] was entitled to at least $15,250.00 of the proceeds from the sale but was, in essence, capturing his share of the proceeds to repay the loan.
The magistrate recognized, however, that sale of the Florida house netted proceeds that were "insufficient to meet the terms of the [Divorce] Decree." Because of their respective contributions to the down payment, the magistrate recommended that forty-three percent of the net proceeds, or $9,910.07, be considered Randy's separate property share and that fifty-seven percent, or $13,136.61, be considered Linda's separate property share. Because of the debt owed to Linda, however, Randy's share was "captured" to help pay off the loans. The magistrate then subtracted Randy's "captured" share ($9,910.07) from the total loan amount ($16,358.69), leaving $6,448.52 owing to Linda. The magistrate therefore recommended a judgment against Randy for $6,448.52. The trial court overruled Randy's objections and agreed that it had jurisdiction to address Linda's application for a deficiency judgment. The court adopted the magistrate's decision and entered judgment for $6,448.52. Randy then commenced this appeal.
 II.
When the trial court grants a divorce and allocates property between the spouses, it must determine what property is marital and what property is separate. R.C. 3105.171 (B). Once the trial court has differentiated between the separate and marital property, it must generally award each spouse his or her own separate property and then equally divide the marital property, unless an equal division would be inequitable. Barkley v. Barkley (1997), 119 Ohio App.3d 155, 159; R.C.3105.171 (D) and (C). The trial court enjoys broad discretion in determining the equitable division of property in divorce cases. SeeMiddendorf v. Middendorf (1998), 82 Ohio St.3d 397, 401. Once a court has made an equitable property division, however, it has no jurisdiction to modify its decision. R.C. 3105.171 (I); see, also, Ricketts v.Ricketts (1996), 109 Ohio App.3d 746, 751.
Randy argues that the trial court's entry of a "deficiency judgment" against him amounts to nothing more than an unauthorized modification of the final divorce decree. He points to language from the final divorce decree, which expressly allocates to Linda the "first $36,608.69 in proceeds" from the sale of the Florida home. This language, Randy insists, does not contemplate any "debt or obligation" owed to Linda. Rather, he argues that the parties assumed the risk that the Florida residence would sell for a lower price than anticipated and that Linda's award from the final divorce decree would be limited to whatever net proceeds were recovered. Simply put, Randy argues that Linda is entitled to nothing more than the $23,046.68 in net proceeds actually attained from selling the marital residence. We do not agree.
Although R.C. 3105.171 (I) specifically prohibits future modification of an equitable property distribution, the trial court retains jurisdiction to "clarify and construe its original property division so as to effectuate its judgment." Redding v. Redding (Dec. 20, 1999), Clinton App. No. 0A99-06- 015, unreported; of. In re Dissolution ofMarriage of Seders (1987), 42 Ohio App.3d 155, 156, and Parsons v.Parsons (Aug. 15, 1997), Jackson App. No. 960A791, unreported (recognizing that trial court retains power to construe ambiguous terms in a separation agreement that is part of final decree). Thus, a judgment entry in a divorce case that clarifies, but does not modify, the original property division is valid. See Haller v. Haller (Mar. 18, 1996), Warren App. No. CA9S-06-063, unreported. The court has broad discretion in clarifying the terms of its previous decree. See Weller v.Weller (1996), 115 Ohio App.3d 173, 179. But a court order purporting to clarify the prior judgment may not vary from, enlarge, or diminish the relief embodied in the final decree. See Stackhouse v. Stackhouse (July 25, 1997), Montgomery App. No. 16244, unreported.
In this case, the court's final divorce decree adopted the magistrate's conclusions "in total" and attached the magistrate's decision, signaling an attempt to incorporate it fully into its own judgment. Although Randy argues that neither the court nor the magistrate provided for a debt or obligation owed to Linda, the plain language of the magistrate's decision belies this claim. The magistrate expressly found that Randy borrowed $16,358.69 from Linda before the marriage and concluded that an equitable division of the parties' assets required Randy "to repay the premarital loans made to him * * *." (Emphasis added.) Toward that end, the magistrate recommended that the first $36,608.69 in net proceeds from the sale of the Florida home would be Linda's; of this amount, the magistrate listed $16,358.69 as repayment of Randy's loan, with the remainder being an allocation of Linda's separate property. The magistrate further estimated the equity value of the Florida home to be $39,000. The magistrate's decision, adopted fully by the court, therefore contemplates two key factors: (1) repayment of $16,358.69 by Randy to Linda and (2) net proceeds of at least $39,000 from the sale of the Florida residence. Randy would be fully responsible for repaying Linda out of funds offset, or "captured" (to use the magistrate's terminology), from his share of the sales proceeds.
A factor contemplated by the court, however, failed to materialize when the parties' Florida house fetched only $23,046.68 in net proceeds. This failure revealed a latent ambiguity in the final divorce decree. Although the decree contemplated full repayment to Linda of Randy's premarital loans from funds generated from the Florida house, the actual sale proceeds did not allow for this allocation. The court's original property division needed clarification concerning what amounts, if any, were still owing to Linda in the event that the house sold for less than the court (and the parties) had anticipated. Rather than seeking a modification, Linda's request appropriately sought clarification and implementation of the final divorce decree once all of the actual figures of the Florida house sale were available. See Phillibert v.Phillibert (June 19, 1998), Lake App. No. 97-L-042, unreported.[2] The court gave the requested clarification, making clear that it had always intended for Randy to repay the full $16,358.69 amount to Linda for the premarital loans. This clarification, which merely substituted concrete numbers for the speculative figures in the divorce decree, did not run afoul of R.C. 3105.171 (I). We therefore conclude that the trial court had jurisdiction to address Linda's application and clarify the parties' rights and obligations under the original divorce decree when the actual sale of the Florida house did not result in the funds contemplated by the court.
We overrule the lone assignment of error and affirm the judgment of the Athens County common pleas court.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J.: Concurs in Judgment and Opinion.
Evans, J.: Dissents with Attached Dissenting Opinion.
 ________________________ William H. Harsha, Judge
[1] In coming to this figure, the magistrate subtracted the $23,046.68 in actual net proceeds from the house sale from the $39,000 figure that the court had anticipated when entering the final divorce decree. The magistrate labeled the resulting. figure of $15,953.32 as the "decrease in equity value." The magistrate then concluded that one-half of this decrease, or $7,976.66, should be allocated as Linda's loss because the house was a marital asset. The magistrate therefore reduced the $12,807.66 deficiency prayed for by $7,976.66, resulting in the $4,831 figure.
[2] In Phillibert, the court entered a final divorce decree ordering three parcels of real property sold, with "`all debts * * * paid out of the proceeds of same and the net equity * * * divided' equally." Phillibert,supra. The decree also stated that "various items would be offset from each party's proceeds." Id. Before the properties were sold, however, Mr. Phillibert loaned $44,800 to the property-management corporation to facilitate the maintenance and sale of the parcels. When the properties were finally sold, Mr. Phillibert requested that half the value of the loans he made be offset from his ex-wife's share. The magistrate and the trial court declined to do so, deciding that any other offset would be an unauthorized modification of the divorce decree. Id. The court of appeals reversed, holding that Mr. Phillibert was not requesting a modification of the final divorce decree. The court noted that Mr. Phillibert's motion requested an "interpretation whether his debts were valid debts that the judgment entry ordered be paid out of the proceeds." Id. The court also recognized that the divorce decree needed interpretation "as to what was an appropriate expense or debt of the court-ordered sale and implementationonce all of the actual figures were available." Id. (emphasis added).