OPINION
Defendant-Appellant Jimmy R. Peters ("Jimmy") appeals the final judgment of the trial court regarding the amended Qualified Domestic Relations Order ("QDRO") issued on July 13, 2000.
On December 12, 1991, a divorce decree was filed for Jimmy and Carolyn Peters ("Carolyn"), which contained the following provision:
 IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Defendant [Jimmy] has a pension plan through General Motors Corporation, and that Plaintiff [Carolyn] shall be and hereby is AWARDED 50% of any funds paid or to be paid to the Defendant from this plan by virtue of his employment, up to and including October 24, 1991. A Qualified Domestic Relations Order (QDRO) shall issue, and the parties are ORDERED to cooperate therein to effect this entitlement of the Plaintiff.
(Emphasis added.) As a result of this provision, the parties agreed to and filed a QDRO on March 11, 1993, which stated:
 From the benefits otherwise attributable or payable to Participant, the Alternate Payee shall receive directly from the General Motors Corporation/IUE Pension Plan:
 (a) 50% x 22.24 years x Monthly benefit*
Years in Plan
The words, "i.e., Cost of Living Index, only," were obviously typed into the document in a different print than the rest of the QDRO. Jimmy explained that when he and his attorney first reviewed the document, Jimmy had advised his attorney he would not sign it with the clause "including any post-retirement enhancements to said pension," because he did not want Carolyn to benefit from any post-retirement enhancements or subsidies he would receive. After some discussion, Jimmy's attorney contacted Carolyn's attorney by phone, and they agreed to add the clause, "i.e. Cost of Living Index, only," to avoid any claim by Carolyn for anything other than basic retirement and cost of living increases. On the other hand, Carolyn understood that this limitation simply prohibited her from recovering any part of back sick pay or vacation pay that Jimmy received at retirement. She explained that the subsidies had always been a part of his retirement, so she naturally assumed they would be included.
In August of 1994, General Motors ("GM") sent a letter to Jimmy, Carolyn and Carolyn's attorney advising that the QDRO submitted was rejected as the terms were too vague. In addition, GM advised that their pension plan did not include any cost of living increases. Jimmy testified that he never received this letter because it was not sent to the address where he had been residing at the time. In any event, Carolyn and her attorney prepared another QDRO and filed it with the court on February 6, 1995. This QDRO provided that Carolyn was entitled to a portion of any early retirement subsidies along with the basic pension payments. It appears from the record that Jimmy did not become aware of this new QDRO until 1998 when he began checking on his retirement. Soon after, he filed a Civ.R. 60(B) motion requesting the court vacate the 1995 QDRO or modify it to reflect the terms of the 1993 QDRO. The court scheduled a hearing to decide the terms of an amended QDRO.
Following the hearing, the court issued a decision on December 7, 1999 vacating the 1993 QDRO and amending the 1995 QDRO in part to allow Carolyn the option to purchase survivorship benefits. The remaining portions of the 1995 QDRO were adopted, and Carolyn was ordered to submit an amended QDRO to the court. Jimmy appealed this decision, but the appeal was dismissed for lack of a final appealable order. Carolyn submitted an amended judgment entry incorporating a new QDRO, which was adopted by the court, but not signed by Jimmy. Jimmy now appeals this judgment raising the following assignment of error:
 The trial court erred and abused its discretion by vacating the 1993 QDRO rather than modifying same based upon the intentions of the parties as set forth in the Decree of Divorce.
The purpose of a QDRO is to recognize or enforce a spouse's right to receive at least a portion of the other spouse's retirement. Weller v. Weller (1996), 115 Ohio App.3d 173, 178 (citations omitted). "If there is good faith confusion over the interpretation to be given to a particular clause of a divorce decree, the trial court in enforcing that decree has the power to hear the matter, clarify the confusion, and resolve the dispute." Mattice v. Mattice (Dec. 18, 1998), Montgomery App. No. 17157, unreported, p. 2, citing Quisenberry v. Quisenberry (1993),91 Ohio App.3d 341, 348.
When interpreting a provision of a separation agreement or divorce decree, courts have different views of the appellate court's standard of review. See e.g. In re Dissolution of Marriage of Seders (1987),42 Ohio App.3d 155, 156 (abuse of discretion); Brown v. Brown (1993),90 Ohio App.3d 781, 784 (de novo). However, we have recently adopted a more thorough approach to reviewing a trial court's interpretive decision in Mattice, supra, at p. 3. If the decree is clear and unambiguous, its interpretation is a matter of law and will be reviewed de novo. On the other hand, if the document is ambiguous, there is a question of fact to be resolved by the trial court, and therefore our review is abuse of discretion. The threshold question of whether an ambiguity exists is a question of law that we review de novo. Id.
In this case, we agree with the trial court that the language of the divorce decree, "any funds paid or to be paid to the Defendant from this plan by virtue of his employment, up to and including October 24, 1991," unambiguously indicates that Carolyn is entitled to fifty percent of any benefits arising from her marital share in the pension. The trial court reasoned that the decree anticipates the retirement benefit will be received in the future, and thus Carolyn is entitled by law to the growth of her portion of the marital share due to deferment. Again, we agree with this analysis.
The Tenth District examined a similar situation in Younkin v. Younkin (Dec. 22, 1998), Franklin App. No. 98AP-419, unreported. In Younkin, the husband argued that his wife was not entitled to his retirement subsidy because he "earned" it in the five years since the divorce. However, Younkin's subsidy was earned as a result of thirty years of employment, twenty-five of which occurred while he was still married. In this regard, the court found that the subsidy was "a form of deferred compensation which is attributable to the entire period in which it was accumulated." Consequently, the wife was entitled to the marital portion of the subsidy along with the pension. Id. at 2-3.
The facts in Younkin mirror the present case. Jimmy was aware of the early retirement subsidy throughout his employment, although he was not entitled to collect it until he had reached thirty years. During twenty-two of the thirty years of his employment, he was married to Carolyn. Therefore, she is entitled to the marital portion of this subsidy along with the pension.
Jimmy also argues that the trial court erred by vacating the 1993 QDRO and amending the 1995 QDRO instead of the converse. After reviewing the record, we find this was not the intention of the trial court. At the hearing, the trial court stated:
 For the record, there was a motion filed by the defendant to basically hold for naught the QDRO that was filed in 1995 by the plaintiff, and the Court issued a decision granting that motion, and dismissing that QDRO and holding it for naught, which brings us here today, of which a decree was filed in December of `91, and indicating that the plaintiff was to receive 50 percent of the defendant's pension with, you know, for the term of the marriage, of course, being 22 years, and that over the number of years that the defendant worked at General Motors.
 A QDRO issued in `93 that was rejected, and basically I'm concerned because there is no QDRO on. And we're here today for both sides to present testimony because there is disagreement as to — there is a disagreement as to what should be in that QDRO that was directed on page 7 of the final judgment and decree of divorce, dated December 12, 1991.
(Emphasis added). In the trial court's decision following the hearing, the court ordered much of the 1995 QDRO to be adopted simply because it was the language the court wanted included in the new QDRO. Even in that decision the trial court stated that the 1995 QDRO was "null and void for lack of service."
The trial court also did not err in vacating the 1993 QDRO. First, it was rejected by the GM plan administrator. Further, the QDRO restricted post-decree enhancements to cost of living increases, which GM does not provide in its pension plan. Because the QDRO was completely unenforceable, the trial court did not err in vacating it.
A QDRO is merely an "order in aid of execution" of a final decree of divorce. Tarbert v. Tarbert (Sept. 27, 1996), Clark App. No. 96-CA-0036, unreported. The trial court is in the best position to know what it intended in issuing its final decree of divorce. It follows that the trial court is not required to approve a QDRO which does not comport with the decree. Moreover, the trial court is required in the first instance to determine whether the division of a parties' pension is fair and equitable. The 1995 QDRO was not an unusual division of a pension plan but reflects the common understanding that it is equitable for a divorced spouse to participate in the other spouse's early retirement benefits in proportion to their years of marriage. Based on the foregoing, the trial court did not err in clarifying the QDRO to reflect the intent of the parties and the court in the divorce decree. Accordingly, Jimmy's sole assignment of error is overruled. Judgment affirmed.
GRADY, J., and YOUNG, J., concur.
* including any post-retirement enhancements to said pension, i.e., Cost of Living Index, only.