This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant Darcy Pajak has appealed from a judgment of the Wayne County Court of Common Pleas, Domestic Relations Division, that ordered him to transfer to Appellee Jean Merrill the sum of $416,726.76, in part from certain assets distributed pursuant to the parties' divorce decree. This Court affirms in part, reverses in part, and remands for proceedings consistent with this opinion.
 I
Darcy ("Husband") and Jean ("Wife") were divorced by a decree of divorce journalized on February 11, 2001. As part of its division of the marital property, the trial court awarded each party assets valued at $619,233.00.[1] Wife's award was composed, in part, of two IRA accounts maintained in Husband's name by Charles Schwab Co., Inc. Specifically, Wife was to receive the whole of Account # CL 6881 6330 ("Account 6330"), valued at $37,164.08, and a portion of Account # CL 6881 6242 ("Account 6242"), valued at $379,562.68. Husband was to receive the remaining balance of Account 6242, valued at approximately $62,100.99. The divorce decree specified that the $379,562.68 of Account 6242 "shall be transferred to [Wife] by a qualified domestic relations order[;]" the decree was silent as to the method for transferring Account 6300 to Wife.
Both accounts consisted primarily of Nortel Networks ("Nortel") common stock. In the months following the trial court's December 31, 1999 valuation date, the value of the Nortel stock steadily increased, correlatively increasing the value of the accounts. This created a problem with respect to the property division, because the divorce decree did not specify how gains or losses from the accounts were to be allocated between the parties. The parties were unable to agree on the specific language to be included in the QDRO to address the allocation of gains or losses, so each party submitted to the trial court proposed language for inclusion in the QDRO. The trial court determined that a proposal submitted by Husband achieved the intent of the court that the property be divided equally, and adopted specific language for inclusion in the QDROs to effect the transfers of Wife's shares of the accounts.
On April 13, 2000, the trial court journalized two qualified domestic relations orders intended to facilitate the transfer to Wife of her interests in the accounts. By April 20, 2000, Wife had established an IRA rollover account for the purpose of receiving the transfer from Account 6242.
In the ensuing months, each party independently corresponded with Schwab in an attempt to effect the transfer of Wife's portion of Account 6242 pursuant to the QDRO. Schwab maintained, however, that it needed a Letter of Authorization signed by each party specifying the source of securities and/or cash that was to be transferred to Wife's new account. Both parties claimed to have made efforts to comply with Schwab's requests, but Schwab never received the information it needed to effect the transfer. Meanwhile, the value of the Nortel stock representing the bulk of the accounts had begun to steadily decline, eradicating the gains that initiated the disagreement over the QDRO language and ultimately leaving the accounts with insufficient assets to satisfy the property awards ordered by the divorce decree.
On January 31, 2001, Wife filed a motion to show cause, in which she asked the trial court for an order requiring Husband to show why he had not taken the actions necessary to comply with and implement the trial court's April 13, 2000 QDROs.[2] On March 29, 2001, Husband filed a motion requesting, inter alia, that the trial court require Wife to show why she had failed to cooperate in effecting the IRA transfers and why she should not be held in contempt therefor. Husband's motion also requested that the trial court re-calculate the division of the IRA accounts in terms which Schwab could follow, and in a manner consistent with the intent of the trial court's prior orders.
The trial court conducted a hearing on the parties' motions, and on May 9, 2001, journalized its judgment entry granting Wife's motion to show cause and denying Husband's motions. The court ordered that Husband transfer to Wife the amount of $416,726.76, representing the sum of the $379,562.68 Wife was to receive from Account 6242 and the $37,164.08 she was to receive from Account 6300. The trial court ordered that Husband transfer all the assets in Accounts 6242 and 6300 to Wife, and that Husband make up for the deficiency occasioned by the decrease in value of the Nortel stock by transferring to Wife the proceeds from the sale of the marital residence. The court ordered Husband to correct any remaining deficiency by transferring to Wife the assets in his FJ Designs 401K and Sears pension plans, with the remaining balance to be paid by Husband in cash.
Husband has timely appealed from this order, and has assigned three errors which this Court has rearranged to facilitate review.
 II Assignment of Error Number One Where the court issued a domestic relations order, which order was drafted by Wife's counsel and was too ambiguous to enable Husband's plan administrator to qualify the order under ERISA or to implement the order's intended transfer of Husband's IRA assets to Wife's IRA, and where Wife subsequently failed to sign the necessary papers to cure such ambiguity, the trial court erred and abused its discretion when it found Husband in contempt of court for failure to comply with the order.
 Assignment of Error Number Three When the court in its contempt order required Husband to transfer cash and other assets to wife to make up for the decrease in value of the subject IRA stock, the court erred in the following ways:
 A. It erred as a matter of law because it required Husband to act as Wife's indemnitor for the stock's reduction in value when such a requirement is contrary to the language of the subject domestic relations order.
 B. It abused its discretion inasmuch as Wife's failure to cooperate with the plan administrator was the sole cause of any "damages" resulting from the subsequent decline in the value of the stock.
In his first assignment of error, Husband has argued that the trial court erred in finding him in contempt of court for failing to comply with the QDRO that ordered the transfer of part of Account 6242 to Wife. Specifically, Husband has contended that he was not at fault for the failure of the transfer because the language of the QDRO was too ambiguous for Schwab to follow, and Wife failed to sign the papers necessary to cure the ambiguity.
Husband has incorrectly stated that the trial court found him in contempt of court. Wife's motion invoked the court's continuing jurisdiction, expressly reserved in each of the April 13, 2000 QDROs, to "enter such further orders as are necessary to enforce the assignment of benefits to Alternate Payee as set forth herein." Her motion requested the trial court to require Husband to show cause why he had not taken action necessary to transfer to Wife the amounts specified in the April 13, 2000 QDROs, and to issue such orders as may be necessary to require Husband to comply with those QDROs. Wife's motion did not include a request for a contempt citation against Husband, nor does the order of the trial court from which Husband has appealed include a finding of contempt.
Husband has asserted that the QDRO ordering the transfer to Wife of $379,652.68 from Account 6242 was too ambiguous to enable Schwab to qualify the order or to implement the order's intended transfer. The QDRO concerning Account 6242 provided:
 Amount of Alternate Payee's Benefit: This Order assigns to Alternate Payee an amount equal to Three Hundred Seventy-Nine Thousand Five Hundred Sixty-Two and 68/100 Dollars ($379,562.68) from the Participant's Total Account Balance accumulated under the I.R.A. as of December 31, 1999. The Alternate Payee's share shall be proportionately divided among the investment funds as Participant's account(s) are allocated as of the date the Order becomes qualified and shall additionally be credited with one-half of the interest and investment income or losses attributable on the accounts from December 31, 1999 until the date the Order becomes qualified.
The court adopted this language to resolve the parties' disagreement as to how to divide what, at that time, were assets in the account generated by Nortel's rising value that were not disposed of by the divorce decree. Wife at that time argued for a proportional division of the account based upon value. Husband argued that the order should distribute to Wife $379,562.68 plus "one-half of the interest and investment income or losses" on the account.[3] The trial court adopted Husband's proposed language because it was "consistent with the court's intent as stated in the decree of divorce. Namely, that [Wife] receive $379,562.68."
The QDRO also provided:
 Commencement Date and Form of Payment to Alternate Payee: The Alternate Payee she [sic] shall be paid her share of the I.R.A. in a single lump-sum cash payment made to the Alternate Payee or by direct roll-over to such qualified plan as the Alternate Payee designates to the Custodian of the I.R.A. In the event the Alternate Payee elects a single lump-sum payment, she shall be responsible for any applicable taxes and/or penalties.
Husband has argued that the QDRO never became qualified by Schwab because "it was ambiguously drafted by Wife's counsel and because Wife refused to cooperate in curing the ambiguity in the Order as drafted." Specifically, Husband has contended that the QDRO was subject to the interpretation that it required a transfer to Wife of securities rather than cash.
There is no dispute that Schwab informed the parties of its inability to effect the transfer intended by the QDRO without further specification by the parties of the cash and securities to be transferred. The issue before the trial court pursuant to the parties' motions to show cause, however, was which party bore responsibility for the failure to communicate to Schwab the information necessary to effect the QDRO.
At the hearing in the trial court, both parties testified that they attempted to transmit the necessary information to Schwab. On June 30, 2000, Schwab sent a letter to Husband stating that Schwab needed further specification from the parties of which assets in the account, which contained both cash and securities, would be allocated to Wife pursuant to the QDRO.[4] Both parties claimed Schwab told them that Schwab could do nothing with regard to the transfers without authorization from the other party. As a result, neither party thereafter submitted to Schwab the necessary specific information.
The trial court determined, however, that it was Husband's failure to comply that resulted in Schwab's inability to effect the transfer ordered by the QDRO. In particular, the trial court noted that both accounts at issue were Husband's accounts and were maintained solely in his name by the custodian, Schwab. Although Husband claimed that Wife had a durable power of attorney to trade shares in Account 6242 or convert its holdings into cash, he did not produce any such document at the hearing. Moreover, Husband's assertions were contradicted by Wife, who testified that she was not aware of any durable power of attorney over the IRA accounts. The court also found that Husband never attempted to convert any of the securities into cash because he was unwilling to expend the effort, or incur any brokerage fees, on transactions involving assets that the court had determined belonged to Wife. Finally, the court determined that Wife's documentation of her correspondence with Schwab evidenced her attempts to bring about the transfer; Husband, on the other hand, retained no records of any correspondence with Schwab regarding the transfers.
The trial court concluded: "It was clear by June 2000 that Schwab was not going to make the transfer and that [Husband] needed to either come back to court for further guidance or, for self-protection, sell enough Nortel to raise at least $379,562.68."[5] In making this determination, the trial court found Husband in violation of Paragraph 12 of the QDRO, which provided:
 Action by Participant: The Participant shall not take any actions, affirmative or otherwise, that can circumvent the terms and provisions of this Qualified Domestic Relations Order, or that could diminish or extinguish the rights and entitlements of the Alternate Payee as set forth herein. Should the Participant take any action or inaction to the detriment of the Alternate Payee, he shall be required to make sufficient payments directly to the Alternate Payee to the extent necessary to neutralize the effects of his actions or inactions and to the extent of her full entitlements hereunder.
(Emphasis sic.) In addition, the trial court determined that Husband took no action to effect the transfer to Wife of Account 6300.
While a trial court does not have continuing jurisdiction to modify a marital property division incident to a divorce or dissolution decree, it has the power to clarify and construe its original property division so as to effectuate its judgment. R.C. 3105.171(I); Weller v. Weller
(1996), 115 Ohio App.3d 173, 178. "Where the disputed clause in the agreement is subject to more than one interpretation that * * * is ambiguous, the court has broad discretion in clarifying the ambiguous language by considering not only the intent of the parties but also the equities involved." Gordon v. Gordon (2001), 144 Ohio App.3d 21, 24-25, quoting Weller, supra at 179. An abuse of discretion connotes more than an error of law or judgment; it implies that the decision was arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
Under the circumstances, this Court cannot say that the trial court abused its discretion in finding Husband at fault for failing to comply with the terms of the QDRO, and ordering Husband to pay to Wife the amounts originally awarded by the divorce decree and subsequent QDROs. Husband's first and third assignments of error are overruled.
 Assignment of Error Number Two Where the express intent of the divorce decree was to make an equal division of marital property, the court exceeded both its jurisdictional contempt power and its jurisdiction under [R.C. 3105.171(I)] where the court, after finding Husband in contempt of its original order, did not simply enforce its prior order but instead modified it so as to effect a grossly disparate redistribution of marital assets in Wife's favor.
In his second assignment of error, Husband has argued that the trial court erred by modifying its prior order rather than merely enforcing it, and by effecting a redistribution of the marital assets. Specifically, Husband has asserted that the trial court's order altered the terms of the QDRO stating that the parties would share equally in the gains or losses on the accounts' funds, and made Husband an indemnitor of the value of the accounts. Husband has also contended that the court's order following the parties' show cause motions changed the provision of the QDRO by ordering Husband, rather than Wife, to pay any taxes and penalties applicable to a cash transfer.
R.C. 3105.171(I) provides that "[a] division or disbursement of property or a distributive award made under this section is not subject to future modification by the court." Future modification is improper even where a court explicitly attempts to retain modification power. Bowen v.Bowen (1999), 132 Ohio App.3d 616, 634, appeal not allowed (1999),86 Ohio St.3d 1402.
The decree of divorce in the instant case included a detailed division of property between the parties. With respect to the marital residence, the parties stipulated that the property would be sold, and the court ordered that "[t]he net proceeds shall be divided equally." The divorce decree also awarded to Husband an FJ Designs, Inc. 401K and Sears Pension Plan. In its May 9, 2001 order, however, the trial court redistributed these assets to Wife to compensate for the insufficiency of assets in the IRA accounts to satisfy Wife's $416,726.76 claim. In so doing, the trial court violated the prohibition against future modifications of property divisions of R.C. 3105.171(I).
As discussed supra, the trial court was within its discretion to enforce its orders, pursuant to Paragraph 12 of the QDROs, when the court ordered Husband "to make sufficient payments directly to [Wife] to the extent necessary to neutralize the effects of his actions or inactions and to the extent of her full entitlements hereunder." The trial court exceeded its authority, however, when it ordered a redistribution of the assets already awarded by the divorce decree. In addition, the trial court altered, rather than enforced, the QDROs when it ordered that Husband transfer to Wife $416,726.76 without accounting for the effects of any taxes and penalties, which the QDRO explicitly provided would be assessed to Wife:
 [Wife] shall be paid her share of the I.R.A. in a single lump-sum cash payment made to [Wife] or by direct roll-over to such qualified plan as [Wife] designates to the Custodian of the I.R.A. In the event [Wife] elects a single lump-sum payment, she shall be responsible for any applicable taxes and/or penalties.
Accordingly, to the extent that the trial court's May 9, 2001 order redistributed assets previously awarded by the divorce decree, and failed to account for any taxes and/or penalties that should be assessed to Wife on the $416,726.76 Husband was ordered to pay to Wife, Husband's second assignment of error is sustained.
 III
Husband's first and third assignments of error are overruled; his second assignment of error is sustained. The cause is remanded to the trial court for proceedings consistent with this decision.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to both parties equally.
Exceptions.
BATCHELDER, P.J., BAIRD, J. CONCUR.
[1] The trial court used a valuation date of December 31, 1999 in its calculations of the value of all assets in the divorce decree.
[2] Wife's January 31, 2001 motion also included a motion for relief from judgment pursuant to Civ.R. 60(B) with respect to an unrelated portion of the divorce decree, which was denied by the trial court and has not been appealed to this Court.
[3] Husband has stated in his first assignment of error that the QDRO "was drafted by Wife's counsel." However, the foregoing paragraph adopted by the trial court, including the "one-half of the interest and investment income or losses" language, was drafted by Husband's counsel.
[4] Husband testified that he did not retain a copy of this or any other correspondence with Schwab. The copy in the record was offered into evidence by Wife, who received a copy of the letter and enclosed Letter of Authorization sent by Schwab to Husband.
[5] The trial court noted that, based upon its judicial notice of the price of Nortel stock during 2000 from a source stipulated to by both parties, Account 6242 had enough assets to satisfy Wife's claim to the account until October 2000.