OPINION
{¶ 1} Defendant-appellant, Jerry Bush, appeals from a decision of the Butler County Court of Common Pleas, Domestic Relations Division, placing of record, without his signature, a Qualified Domestic Relations Order ("QDRO") tendered by his former wife, plaintiff-appellee, Shirley M. Bush, n.k.a. Adkins.
 {¶ 2} Bush and Adkins were married in 1971. Their marriage was dissolved in August of 1998. The parties entered into a separation agreement, which the trial court later approved and incorporated into a decree of dissolution. Section V of the separation agreement stated:
 {¶ 3} "V. PENSION OR RETIREMENT PLAN
 {¶ 4} "Wife shall receive ½ of Husband's pension through his employer."
 {¶ 5} In January 2002, Adkins presented Bush, for his signature, a proposed QDRO, relating to the division of Bush's pension. The QDRO provides in relevant part:
 {¶ 6} "* * *
 {¶ 7} "7. Amount of Alternate Payee's Benefit: This Order assigns to Alternate Payee an amount equal to Fifty Percent (50%) of the MaritalPortion of the Participant's Accrued Benefit under the Plan (including, but not limited to, any temporary or supplemental benefits or any Part A or Part B benefits earned under the Plan) as of the Participant's benefit commencement date. The marital Portion shall be determined by multiplying the Participant's Accrued Benefit by a fraction (less than or equal to 1.0), the numerator of which is the number of months of the Participant's participation in the Plan earned during the marriage (from October 30,1971 to August 7, 1998), and the denominator of which is the total number of months of the Participant's participation in the Plan as of his benefit commencement date.
 {¶ 8} "Notwithstanding the language set forth above in this Section 7, in the event that the Alternate Payee becomes entitled to aPre-Retirement Surviving Spouse Benefit or a Post-Retirement SurvivingSpouse Benefit under Section 12 or 13 of this Order, respectively, then the Alternate Payee's right to a share of the Participant's benefits as called for under this Section 7 shall be terminated as of the date of such Participant's death, and such Pre or Post-Retirement Surviving Spouse Benefit shall be payable to the Alternate Payee in lieu of any other benefits to which she may be entitled under the terms of this Order.
 {¶ 9} "8. Post Retirement Increases: The Alternate Payee is entitled to a share of any post-retirement increase. The alternate payee's share of said benefit is proportional to the Alternate Payee's interest in the Participant's total accrued benefit pursuant to the formula set forth in section 7.
 {¶ 10} "9. Early Retirement Supplements, Interim Supplements,Temporary Benefits: The Alternate Payee is entitled to a share of any early retirement supplement, interim supplement or temporary benefit. The alternate payee's share of said benefit is proportional to the Alternate Payee's interest in the Participant's total accrued benefit pursuant to the formula set forth in section 7.
 {¶ 11} "10. Commencement of Payments to Alternate Payee: Benefits to the Alternate Payee shall commence when the Participant commences his benefits under the Plan.
 {¶ 12} "11. Duration of Payments to Alternate Payee: Benefits to the Alternate Payee will be payable for the duration of the Participant's lifetime.
 {¶ 13} "12. `Pre-Retirement' Surviving Spouse Benefits: The Alternate Payee is entitled to a pre-retirement surviving spouse benefit in an amount which is based upon the Alternate Payee's share of the accrued pension benefit as set forth in section 7.
 {¶ 14} "13. `Post-Retirement' Surviving Spouse Benefits: The Alternate Payee is entitled to a post-retirement surviving spouse benefit in an amount which is based upon the Alternate Payee's share of the accrued pension benefit as set forth in section 7.
 {¶ 15} "14. Reversion of Benefits to Participant Upon Death ofAlternate Payee: If Alternate Payee predeceases Participant either prior to or after the commencement of the Alternate Payee's assigned share of the benefits, such benefits will revert to the Participant.
 {¶ 16} "* * *." (Emphasis in bold, sic.)
 {¶ 17} Bush refused to sign the QDRO on the grounds that it divided certain benefits not contemplated by the parties' separation agreement. Adkins filed a motion requesting that Bush either be held in contempt or ordered to sign the QDRO, or that the QDRO be filed without Bush's signature.
 {¶ 18} The magistrate issued a decision, which stated, in pertinent part, as follows:
 {¶ 19} "I find that the separation agreement's minimalist language only requires that Mrs. Adkins receive `1/2 of the Husband's pension through his employer.' I conclude that the only reasonable interpretation of this phrase is that plaintiff is to receive one-half of defendant-husband's coverture fraction retirement benefits due him from his employer.
 {¶ 20} "I further conclude that any pre-retirement supplements, early retirement incentives, etc., offered to defendant constitute compensation for diminished pension pay-out after retirement. I conclude that plaintiff-wife is entitled to share in such compensation as she will have to share in any dimunition of the value of her share of defendant's pension.
 {¶ 21} "For the reasons cited above, I recommend that defendant be ordered to execute the qualified domestic relations order without further delay. The issue of contempt is reserved for further hearing if one is subsequently set by the court or parties."
 {¶ 22} Bush filed objections to the magistrate's decision. The trial court overruled Bush's objections and affirmed the magistrate's decision. The trial court entered into the record Adkins' proposed QDRO, without Bush's signature.
 {¶ 23} Bush appeals from the trial court's decision, raising two assignments of error.
Assignment of Error No. 1
 {¶ 24} "The trial court erred to the prejudice of second petitioner-appellant when it ruled that first petitioner-appellee is entitled to pre-retirement supplements, early retirement incentives, etc."
 {¶ 25} Bush argues that the trial court erred by approving Adkins' proposed QDRO because it impermissibly expands the benefits to which Adkins is entitled under the terms of the parties' separation agreement. We agree with this argument.
 {¶ 26} A trial court cannot modify or amend a marital property division incident to a divorce or dissolution decree. R.C. 3105.171(I). However, a trial court does have authority to clarify and construe its original property division in order to effectuate its judgment. Petersonv. Peterson (July 12, 1999), Butler App. No. CA98-07-145. When parties dispute the meaning of a clause in their separation agreement, a trial court must first determine whether the clause is ambiguous. A clause is ambiguous where it is subject to more than one interpretation. Weller v.Weller (1996), 115 Ohio App.3d 173, 179. When a clause in a separation agreement is deemed to be ambiguous, a trial court has the responsibility to interpret it. In re Dissolution of Marriage of Sedars (1987),42 Ohio App.3d 155, 156. A trial court has broad discretion in clarifying ambiguous language by considering the parties' intent and the equities involved. Id. A trial court's decision interpreting ambiguous language in a separation agreement will not be overturned on appeal absent an abuse of discretion. Id.
 {¶ 27} However, where the terms of a separation agreement are unambiguous, a trial court may not clarify or interpret those terms. SeeIn the Matter of Leonhart v. Nees (Aug. 20, 1993), Erie App. No. E-93-03 (where contract language is not ambiguous, trial court need not interpret it other than to give effect to its plain language); see, also, Sowald Morganstern, Domestic Relations Law (2002) 438, Section 9:48 ("[t]he court may not construe, clarify, nor interpret language which is not ambiguous"). "Further, where there is no uncertainty, but only an absence in the agreement of a provision about a particular matter, the court must not construe as included something intended to be excluded nor make the contract speak where it was silent." Sowald Morganstern, citing Morgan v. Morgan (June 14, 1994), Columbiana App. No. 93-C-36. Thus, where a separation agreement incorporated into a dissolution decree omits a key provision, a court may not use its equitable powers to correct the omission; instead, the decree can be attacked only through a Civ.R. 60(B) motion. Sowald Morganstern, citing Morgan.
 {¶ 28} The issues presented in this case arise from the "minimalist language" contained in the parties' inartfully drafted separation agreement. That agreement provides simply that Adkins is to receive one-half of Bush's pension through his employer. There is nothing ambiguous about that clause. The QDRO proposed by Adkins and adopted by the trial court tried to "fill in the gaps" left by Section V of the parties' separation agreement by allowing Adkins to share in any pre-retirement and post-retirement benefits that Bush may acquire or had acquired, and by providing Adkins with survivorship benefits. However, these provisions of the QDRO do not simply clarify or construe an ambiguity in the parties' separation agreement, but, instead, amend or modify the agreement, which is not permitted. Cf., Redding v. Redding
(Dec. 20, 1999), Clinton App. No. CA99-06-15 (phrase in separation agreement providing for wife to receive one-half of husband's retirement benefits in such manner "as may be of benefit to her" justified trial court's clarifying its original property division to allow provision in QDRO granting wife survivorship benefits). Accordingly, the trial court erred by adopting Adkins' proposed QDRO and placing it of record without Bush's signature.
 {¶ 29} Bush's first assignment of error is sustained.
Assignment of Error No. 2
 {¶ 30} "The trial court erred to the prejudice of second petitioner-appellant when it found that the first petitioner-appellee's share of the pension would be reduced in value by any pre-retirement supplements, early retirement incentives, etc."
 {¶ 31} Bush's second assignment of error has been rendered moot by our disposition of his first assignment of error, and, therefore, is overruled on that basis. See App.R. 12(A)(1)(c).
 {¶ 32} The trial court's judgment is reversed, and this cause is remanded to the trial court for further proceedings according to law and consistent with this opinion.
WALSH and POWELL, JJ., concur.