McKINNEY, Appellant,

v.

McKINNEY, Appellee.

[Cite as *McKinney v. McKinney* (2001), 142 Ohio App.3d 604.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 18526.

Decided May 4, 2001.

*Richard P. Arthur,* for appellant.

*Gary Hruska,* for appellee.

---

GRADY, Judge.

This is an appeal from an order of the court of common pleas, domestic relations division, which clarified the provisions of a prior decree of divorce that divided a retirement account and issued a qualified domestic relations order ("QDRO") consistent with the prior decree.

Shirley G. McKinney, the husband, and Betty S. McKinney, the wife, were divorced on October 6, 1993. During the twenty-nine years the parties were married, Mr. McKinney was employed by General Motors Corporation. One of the benefits of that employment was a pension plan that General Motors funded.

The judgment and decree of divorce that the court entered on October 6, 1993 had been prepared by Mr. McKinney's attorney and was approved in writing by Mr. McKinney, by Mrs. McKinney, and by her attorney. An "Agreement Regarding Pension Plan," similarly prepared and approved, was filed with the court the same day.

The judgment decree of divorce contains the following provision, which is the sole provision in the decree concerning Mr. McKinney's retirement account:

"8.  Qualified Domestic Relations Order: The Plaintiff's retirement benefits through his employer, Harrison Radiator Division, General Motors Corporation, IUE Hourly Rate Pension Plan, shall be subject to equal division between the parties *based upon the present value of such pension as of June 29, 1993*, with such arrangement embodied in a Qualified Domestic Relations Order that shall be prepared by Defendant's counsel and filed with this Court within thirty (30) days of the entry of this final Judgment Decree of Divorce. The Plaintiff shall reasonably cooperate in the execution or re-execution of any and all documents or amended Qualified Domestic Relations Orders necessary to ensure proper and legal compliance with any and all applicable rules and regulations. In addition, the Plaintiff is hereby ORDERED to exercise any survivorship option in favor of the Defendant in order to protect her interests in such pension plan proceeds." (Emphasis added.)

The Agreement Regarding Pension Plan contains the following provision concerning Mrs. McKinney's share:

"SECTION 4.  The intent of the parties and this Court is to make payable to Alternate Payee as and for her share of Participant's benefits under the Plan an amount which comprises one-half of the present value of the total benefits earned by the Participant during the parties' marriage. The parties' marriage, for purposes of this Order, ended June 29, 1993. They had been married 28.9 years. As of June 29, 1993, Participant had 29.2 years of GM pension plan credited service, all of which was earned while the parties were married. The Alternate Payee's one-half share would have been .50, or fifty per cent (50%) or .50. As Participant's GM employment continues, however, the *Alternate Payee's percentage share of the total benefits may decrease even though the value of both parties' interest in the Plan increases*. To effectuate this intent, the Court ORDERS that Alternate Payee's share shall be a fractional portion of Participant's benefit, the numerator of which shall be .50 multiplied by the number of years, to the nearest tenth of a year, of Participant's credited service in the Plan as of the 29th day of June, 1993, and the denominator of which is the total number of years of Participant's credited service in the Plan as of the time the benefits would otherwise be payable to Participant. This relationship may be represented as the following formula:

$$S = \frac{.50 \times 29.2}{Y}$$

S   =   Alternate Payee's share of Participant's Benefits

    =   Total number of years Participant has been participating in the Plan as of the time he is eligible to receive benefits thereunder

29.2   =   the number of years of credited service Participant had in the Plan as of June 29, 1993."  (Emphasis added.)

Mr. McKinney retired in 1999.  General Motors then commenced distribution of the divided pension.  Believing that she was not receiving the share to which she was entitled, Mrs. McKinney asked the court to clarify its 1993 decree and issue a qualified domestic relations order ("QDRO") consistent with it.

It appears from the record that the share that Mrs. McKinney was paid by General Motors was one-half the monetary value of a pension that would have been available to Mr. McKinney as of the date of the divorce.  That amount was substantially less than the share she would receive had the monetary value of the pension been calculated as of the date of Mr. McKinney's retirement, six years later.  The reason Mrs. McKinney was paid the lesser amount appears to be the use of the words "present value" in the 1993 decree, possibly with reference to the money the parties would share.

The trial court ruled on the motion in Mrs. McKinney's favor.  The court found that its use of the term "present value" was a drafting error, that no evidence of the plan's present value had been offered in 1993, and that neither the court nor the parties had intended to then make a lump-sum division for which a finding of present value is required.  The court went on to state:

"What the parties did intend, and did file with the court, and what the court did approve, was a Qualified Domestic Relations Order dividing the pension in accordance with a 'coverture formula.'  That formula clearly defines defendant's alternate payee share of plaintiff's pension.  This agreed QDRO is consistent with the concept of a coverture formula, which defines the alternate payee's share of a pension participant's pension as being one half of the total years of the marriage divided by the total number of years of pension service.  Both the formula and the interpretation of this formula are spelled out on page 3 of the QDRO, which both parties sign.  The explicit language prepared by plaintiff's counsel, signed by both parties, and approved by the court, reads: 'As Participant's GM employment continues, however, the Alternate Payee's percentage share of the total benefits may decrease *even though the value of both parties' interest in the Plan increases.*'  (Emphasis added.)  The parties acknowledged that each party's interest in the pension plan would grow, not that defendant's interest would be

frozen at some undisclosed 'present value' figure. The argument now set forth by plaintiff is totally at odds with this explicit language from the QDRO approved at the time of the entry of the parties' divorce decree."

The court issued a QDRO consistent with its decision. Mr. McKinney filed a timely notice of appeal from the court's order.

## FIRST ASSIGNMENT OF ERROR

"The trial court lacked subject matter jurisdiction to change the parties' agreement embodied in agreed judgment entry and decree of divorce filed October 6, 1993 and agreement regarding pension filed October 6, 1993."

## SECOND ASSIGNMENT OF ERROR

"The trial court's interpretation of the QDRO contradicts the agreed judgment entry and decree of divorce."

The issues of fact and law which these assignments of error present are intertwined. Therefore, they will be considered together.

A retirement benefit that one of the spouses acquired during the marriage is a marital asset that must be divided equitably between them by a domestic relations court that enters a decree of divorce terminating their marriage. R.C. 3105.171. Subsection (I) of that section states: "A division or disbursement of property or a distributive award made under this section is not subject to future modification by the court." See, also, *Wolfe v. Wolfe* (1976), 46 Ohio St.2d 399, 75 O.O.2d 474, 350 N.E.2d 413. That prohibition, which was enacted by the General Assembly pursuant to Section 4(B), Article IV of the Ohio Constitution, is jurisdictional.

■ A QDRO is a current distribution of the rights in a retirement account that is payable in the future, when the payee retires. It is ordinarily issued subsequent to and separate from the decree of divorce itself, after the employer payor has approved its terms as conforming with the particular pension plan involved. A QDRO is, therefore, merely an order in aid of execution on the property division ordered in the divorce decree. So long as the QDRO is consistent with the decree, it does not constitute a modification, which R.C. 3109.171(I) prohibits, and the court does not lack jurisdiction to issue it. *Tarbert v. Tarbert* (Sept. 27, 1996), Clark App. No. 96–CA–0036, unreported, 1996 WL 555039.

■ Here, the dispute was not over the QDRO but over the meaning of the divorce decree on which the QDRO would issue. If the decree was ambiguous with respect to its division of Mr. McKinney's retirement benefits, the court could properly clarify its meaning without violating the prohibitions of R.C. 3105.171(I).

*Weller v. Weller* (1996), 115 Ohio App.3d 173, 684 N.E.2d 1284; *Gearhart v. Gearhart* (Nov. 19, 1999), Montgomery App. No. 17725, unreported, 1999 WL 1043894. Because the provision involved was a product of the parties' agreement, which the court had adopted, the court could properly determine any ambiguity in the decree upon a finding of what the parties' intention was.

An ambiguity exists when a provision in an order or decree is reasonably susceptible of more than one meaning. That's the case here. The term "present value," as it is used in Section 8 of the decree, implies that the share due Mrs. McKinney is one-half the 1993 monetary value of Mr. McKinney's pension. However, "present value" may also refer to the years of service with General Motors that Mr. McKinney had accrued at that time. The court was required to resolve that ambiguity. We believe that it properly did.

The coverture formula that the trial court described in its clarification order is the proper basis on which to divide the benefits payable to one of the spouses in a pension plan of this kind. See *Layne v. Layne* (1992), 83 Ohio App.3d 559, 615 N.E.2d 332. It permits an increase in the value of the parties' interests in the plan from the decree until the date of retirement. The parties here expressed an intent to accomplish that result in their Agreement Regarding Pension Plan, quoted above. They noted that the value of Mrs. McKinney's share could increase, as it did, through the six years until Mr. McKinney retired. To freeze the amount of Mrs. McKinney's benefit at its 1993 value, as Mr. McKinney suggests, would defeat that prospect by preventing any increase after that time. That would have happened had Mr. McKinney retired in 1993, but he did not.

The court was authorized to resolve the ambiguity in its decree, and there is competent, credible evidence supporting the meaning at which the court arrived. The assignments of error are overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

WOLFF, P.J. and FREDERICK N. YOUNG, J., concur.