OPINION
{¶ 1} The defendant-appellant, Jack A. Kelley, appeals the judgments of the Defiance County Court of Common Pleas accepting the Proposed Qualified Domestic Relations Order (hereinafter "QDRO) in favor of plaintiff-appellee, Mary M. Kelley.
 {¶ 2} Jack and Mary were married on October 12, 1974, and on May 8, 2001, Mary filed for divorce in the Defiance County Common Pleas Court. On August 7, 2001, a pre-trial conference was held, and both parties reached an agreement to divide the property. The agreement, which was filed with the trial court, provided, inter alia, that Mary would receive (1) the marital household; (2) the furniture and household goods that are free and clear; (3) the 1996 Chevrolet conversion van; (4) "one-half of 26/29 of defendants pension 363.19"; and (5) spousal support of $50/week for eighteen months beginning when the child support is terminated. Moreover, the agreement stated that Jack would receive (1) the computer; (2) two 3-wheelers and 16 foot camping trailer; and (3) his profit sharing plan in the amount of approximately $400. Finally, the agreement detailed that Jack would additionally pay for (1) the $2000 Visa credit card bill; (2) the $300 Mastercard credit card bill; (3) $280 fuel bill; and (4) the remaining balance of the 1996 Chevrolet conversion van, which is estimated to be paid off in February 2002.
 {¶ 3} Mary and Jack went before the magistrate on September 21, 2001, and the August 7, 2001 agreement was read into the record. Concerning Jack's pension, however, Jack's attorney, when reading the agreement into the record, stated, "[w]ife will receive, uh, one-half of 26/29th's of Defendant's present pension of 363.19."[1] Final Hearing before the Magistrate, September 21, 2001 at p. 8. After reading the entire agreement into the record, the magistrate asked Mary if what was read into the record was their agreement, and Mary affirmed that it was. The record states:
Q. Is that your agreement?
 A. Uh yeah. I guess so.
Id. at 12.
 {¶ 4} A divorce decree was filed on December 26, 2001. In the divorce decree, the trial court, found that the August 7, 2001 pre-trial agreement was "fair and reasonable" and adopted that agreement as the order of the court; however, the trial court, in its judgment entry, additionally outlined the terms of the August 7, 2001 pre-trial agreement and stated that Mary "shall [receive] the survivor's benefit of [Jack's] pension at General Motors." However, the judgment entry did not address what portion of Jack's pension she would actually receive.
 {¶ 5} Over the next two years, several QDROs were sent to Jack for his approval regarding the issue of what portion of Jack's pension Mary should receive under the divorce agreement. None met his approval, so on October 6, 2003, Mary filed a motion requesting a QDRO hearing in order to interpret the language in the divorce decree regarding the pension benefits.
 {¶ 6} On July 21, 2004, both sides testified as to their interpretation of the language regarding the distribution of Jack's pension before the Common Pleas Court of Defiance County. First, Paul Cunningham, Jack's attorney at the time of the 2001 divorce, testified as to the origin of the number $363.19. Cunningham stated that the $363.19 figure was Jack's monthly pension payment if he retired at the time of the divorce according to Jack's employer's retirement estimate. QDRO Hearing, July 21, 2004 at pp 12. Furthermore, Cunningham testified that the $363.19 figure was the intention of both parties in order to equalize the distribution of the marital property. Id. at 13-15. Finally, on cross-examination, Mary's attorney asked Cunningham about the copy of the August 7, 2001 agreement he received on direct examination, which stated, "one-half of 26/29 of [Jack's] pension of [$]363.19."[2]
 {¶ 7} Additionally, both Mary and Jack testified to their individual interpretation of the pension distribution language. Mary argued that she should receive one-half of 26/29ths of Jack's current pension of $2400 per month. On the other hand, however, Jack argued that the agreement explicitly stated that Mary should receive "one-half of 26/29ths of $363.19," which is approximately $162.81.
 {¶ 8} After hearing all the testimony, the trial court stated:
I'm going to treat this as an undivided asset. I'm going to say thatthe fair way to divide that asset is as we do in the garden variety caseis to divide, equally divide, the marital portion of the pension whichwould entitle [Mary] to one-half of . . . 26/29ths of the pensionbenefits that you receive when you receive them. In light of that and inlight of the dispute that is raised, the Court's decision is going to bethat that will not be retroactive from the time you retired but willstart now.
 And insofar as that marital asset has gone from a martial asset capableof division to a payout status income stream, I'm going to reform anothercomportion of their agreement and provide that in consideration of thatpayment, he will not be required to pay the 50 bucks per week for the 18months and I think that is a fair resolution — I think that is analternative resolution.
Id. at 76-77.
 {¶ 9} On September 21, 2004, the trial court entered a judgment entry that conformed to its July 21, 2004 conclusion. In its judgment entry, the trial court ordered that Mary was entitled to receive one-half of 26/29 of Jack's current pension of approximately $2400, not just one-half of 26/29 of $363.19. Moreover, the judgment entry stated, "[p]aragraph 12 shall be deleted in its entirety. Defendant is not ordered to pay spousal support to the Plaintiff and Defendant's spousal support obligation shall be and hereby is terminated." Judgment Entry, September 21, 2004 at p. 2.
 {¶ 10} Jack appeals alleging three assignments of error. For the sake of judicial economy, the assignments of error will be consolidated and discussed together.
 Assignments of Error The trial court abused its discretion and erred in adopting a qualifieddomestic relations order, which contradicts the original divorce decree,wherein said qdro modified the pension provisions of the divorce decree.
 The trial court lacked subject matter jurisdiction to modify theparties' property settlement embodied in a decree of divorce regardingdefendant-appellant's pension division.
 The trial court abused its discretion by issuing to plaintiff-appelleepension benefits earned by defendant-appellant two years after the decreeof divorce, and issuing a qdro which takes into account said post divorceasset, and is void for lack of subject matter jurisdiction.
 {¶ 11} As a threshold matter, we began with a review of the September 21, 2004 trial court's QDRO judgment entry, which the trial court relied on as authority to "modify" the intentions of both parties in determining the distribution of Jack's pension. In the QDRO judgment entry, the trial court stated:
Upon consideration of the pleadings, testimony of the parties, andevidence submitted, this Court finds that no agreement was reached as tothe separation of the Defendant's pension assets, whereas each party hada different interpretation of the said agreement at the time of the finalhearing. The Court finds that it must fairly divide the Defendant'spension, as it is a marital asset, currently undivided.
QDRO Judgment Entry, September 21, 2004 at p. 1 (emphasis added).
 {¶ 12} In reviewing this determination by the trial court, we rely first on the transcript of the hearing held before the magistrate on September 21, 2001. At that hearing, the magistrate identified the August 7, 2001 marital asset distribution agreement as a compromise agreed upon by both Mary and Jack. At that point, the August 7, 2001 pre-trial agreement is read into the record. The record states, "[w]ife will receive, uh, one-half of 26/29ths of Defendant's present pension of [$]363.19." Final Hearing before the Magistrate, September 21, 2001 at p. 8. Subsequently, after the entire agreement was read, which included the portion concerning the agreed upon distribution of Jack's pension, supra, the trial court asked Mary if that was an accurate reflection of the agreement, and Mary affirmed that it was. The record states:
Q. Is that your agreement?
 A. Uh, yeah. I guess so.
Id. at p. 12.
 {¶ 13} A review of the QDRO hearing transcript is also instructive. Jack's attorney at the time of the divorce in 2001 testified that the $363.19 figure was Jack's monthly pension payment if he retired at the time of the divorce according to Jack's employer's retirement estimate. QDRO Hearing, July 21, 2004 at pp 12. Moreover, Jack's attorney stated that at the August 7, 2001 pre-trial conference, all parties were aware, and were in agreement, that the amount Mary would receive was a percentage of Jack's pension at the time of the divorce, which was one-half of 26/29ths of $363.19. In fact, Jack's previous attorney stated on the record that together all parties calculated the amount of money Mary would receive, i.e. one-half of 26/29ths of $363.19, or approximately $162.81, at least two times, and no one objected. Id. at p. 36. This testimony was not discredited on cross-examination or by Mary when she testified.
 {¶ 14} When Mary testified at the QDRO hearing, she stated that she did not understand the $363.19 figure. Nevertheless, she never testified that the parties had not been in agreement over the August 7, 2001 marital distribution settlement. The record states:
Q. Okay. And he also agreed to give you survivor benefits on hispension if he would happen to pass away you would get, correct?
 A. Um-hum.
 Q. All right. And that was all in consideration for one-half of26/29ths of 363.19?
 A. I never looked at the number. I never paid attention. You read itand it went right in this ear and that ear `cause I seen I get half.
Id. at p. 60.
 {¶ 15} In sum, based on the evidence presented at the magistrate hearing prior to the divorce decree and QDRO hearing, we conclude that the trial court's finding that "no agreement was reached as to the separation of the Defendant's pension assets" is against the weight of the evidence. Based on the testimony supra, and the plain language of the August 7, 2001 agreement as it was referred to in the record and agreed to by both parties on September 21, 2001, we conclude that both parties agreed that Mary would receive "one-half of 26/29th's of Defendant's present pension of 363.19." Based on that language, we must next determine whether the provision that Mary is entitled to "one-half of 26/29th's of Defendant's present pension of 363.19" is ambiguous as to the meaning of "present pension."
 {¶ 16} Retirement benefits that spouses acquire during a marriage are a marital asset that must be divided between the spouses pursuant to R.C. 3105.171. R.C. 3105.171(I) provides that "[a] division or disbursement of property or a distributive award made under this section is not subject to future modification by the court." If a divorce decree is ambiguous as to its division of a retirement plan, owever, a trial court can properly clarify its meaning without violating R.C. 3105.171(I).McKinney v. McKinney (2001), 142 Ohio App.3d 604, 608, 756 N.E.2d 694
citing Weller v. Weller (1996), 115 Ohio App.3d 173, 179,684 N.E.2d 1284. . An ambiguity arises "when a provision in an order or decree is reasonably susceptible of more than one meaning." McKinney,142 Ohio App.3d at 609.
 {¶ 17} In McKinney, the trial court entered a divorce decree on October 6, 1993. McKinney, 142 Ohio App.3d at 605. In preparation for dividing the assets, both parties agreed that Mr. McKinney's pension "shall be subject to equal division between the parties based upon the present value of such pension as of June 29, 1993." Id. at 606. In its divorce decree, the trial court adopted the parties' language regarding the pension. Id. Moreover, attached to the pension agreement was a provision that governed the distribution of Mr. McKinney's pension. That provision read, in pertinent part:
The intent of the parties and this Court is to make payable toAlternate Payee as and for her share of Participant's benefits under theplan an amount which comprises one-half of the present value of the totalbenefits earned by the Participant during the parties' marriage. * * *The Alternate Payee's one-half share would have been . . . fifty percent. . . . As Participant's GM employment continues, however, theAlternate Payee's percentage share of the total benefits may decreaseeven though the value of both parties' interest in the Plan increases. * * *
Id. at 606 (emphasis in original).
 {¶ 18} Mr. McKinney retired in 1999, and Mrs. McKinney began receiving half of the pension valued at the time of the divorce in 1993 not the full pension value at the time of Mr. McKinney's retirement in 1999. Id. at 607. Mrs. McKinney, believing that she deserved to receive half of the 1999 pension value, filed a QDRO with the trial court to clarify the meaning of "present value" as stated in the agreement adopted by the trial court in the divorce decree. The trial ourt then "amended" its divorce decree to clarify the ambiguity and ordered that Mrs. McKinney receive half of the pension as valued in 1999. Id. at 608. Referring to the agreement and the adopted language of both parties, the trial court stated:
That formula clearly defines defendant's alternate payee share ofplaintiff's pension. * * * Both the formula and the interpretation of thisformula are spelled out on page 3 of the QDRO, which both partiessigned. The explicit language prepared . . . reads: `As Participants GMemployment continues, however, the Alternate Payee's percentage share ofthe total benefits may decrease even though the value of both parties'interest in the Plan increases.' (Emphasis added.) The partiesacknowledged that each party's interest in the pension plan would notgrow, not that defendant's interest would be frozen at some undisclosed`present value' figure.
Id. at 607-08.
 {¶ 19} Mr. McKinney appealed alleging that the trial court could not amend the divorce decree because it lacked subject matter jurisdiction. Id. The court of appeals disagreed and stated:
Here, the dispute was not over the QDRO but over the meaning of thedivorce decree on which the QDRO would issue. If the decree was ambiguouswith respect to its division of Mr. McKinney's retirement benefits, thecourt could properly clarify its meaning without violating theprohibitions of R.C. 3105.171(I). Because the provision involved was aproduct of the parties' agreement, which the court had adopted, the courtcould properly determine any ambiguity in the decree upon a finding ofwhat the parties' intention was.
* * *
An ambiguity exists when a provision in an order or decree isreasonably susceptible of more than one meaning. That's the case here.The term "present value," as it is used in Section 8 of the decree,implies that the share due Mrs. McKinney is one-half the 1993 monetaryvalue of Mr. McKinney's pension. However, "present value" may also referto the years of service with General Motors that Mr. McKinney had accruedat that time.
 The coveture formula that the trial court described in itsclarification order is the proper basis on which to divide the benefitspayable to one of the spouses in a pension plan of this kind. It permitsan increase in the value of the parties' interests in the plan from thedecree until the date of retirement. The parties here expressed an intentto accomplish that result in their Agreement Regarding Pension Plan,quoted above. They noted that the value of Mr. McKinney's share couldincrease, as it did, through the six years until Mr. McKinney retired. Tofreeze the amount of Mrs. McKinney's benefit at its 1993 value, as Mr.McKinney suggests, would defeat that prospect by preventing any increaseafter that time.
Id. at 608-09 (internal citations omitted).
 {¶ 20} Unlike the provisions and clarifications regarding the distribution of the husband's pension that was attached to the pension agreement at the time of the divorce in McKinney, the instant case only has the plain language of the August 7, 2001 agreement as read into the record and agreed upon by both parties at the September 21, 2001 hearing, as well as the testimony at the QDRO hearing, to determine whether an ambiguity exists. Based on the totality of the record, we conclude that no ambiguity exists in interpreting the amount of pension that Mary is entitled to under the divorce agreement. This conclusion is supported by Jack's previous attorney's testimony at the QDRO hearing, which explicitly stated, without contradiction from Mary, that both parties figured the amount of money that Mary would receive when applying the percentage to $363.19, instead of using a different estimate that could represent Jack's vested pension when he actually would retire. Whereas McKinney used an "Agreement Regarding Pension Plan" to interpret the meaning behind "present value," we have no such assistance in the record. The totality of the record in this case is clear and unambiguous in establishing that Mary agreed to "one-half of 26/29th's of Defendant's present pension of 363.19," which is approximately $162.81 per month. To this extent only, the first and second assignments of error are sustained.
 {¶ 21} In the third assignment of error, Jack contends that the trial court erred in computing the relative percentage of the pension that Mary should receive. Jack argues that because he worked for two more years after the divorce, the correct percentage should be one-half of 26/31 instead of one-half of 26/29. We agree, and Mary concedes this argument; therefore, we find merit in Jack's third assignment of error.
 {¶ 22} In sum, the trial court's September 21, 2004 judgment entry modifying the distribution of Jack's pension as well as deleting its original order requiring Jack to pay $50 per month in spousal support is vacated. This cause is remanded for further proceedings in accordance with this opinion. On remand, the trial court is to issue a new QDRO to clarify the judgment entry of divorce by reflecting the unambiguous language of the agreement as it reflected in the record and agreed upon by both parties at the September 21, 2001 hearing. Moreover, the trial court should modify the amount of pension that Mary is to receive so that it is in conformity with fact that Jack worked a total of 31 years.
Judgments vacated and cause Remanded.
 Cupp, P.J., and Rogers, J., concur.
[1] Although the original August 7, 2001 states "one-half of 26/29 of [Jack's] pension [$]363.19," all subsequent references to the pension, including the one read into the record on September 21, 2001, refers to the pension agreement as "one-half of 26/29 of [Jack's] pension of
[$]363.19" (emphasis added).
[2] It should be noted that the original agreement that was filed with the trial court did not contain the word "of." Moreover, it should also be noted that although this "altered" agreement is attached to the appellate briefs, it was not filed with the trial court and there is no indication in the record as to how or when the word "of" was handwritten on the document.