OPINION
{¶ 1} Defendant-appellant, Jerome Kingery, appeals the December 28, 2004 judgment of the Logan County Court of Common Pleas and the accompanying Second Amended Qualified Domestic Relations Order (QDRO). In its judgment entry, the trial court granted plaintiff-appellee, Jacqueline Kingery's, Civ.R. 60(B) motion to vacate the Amended Qualified Domestic Relations Order and ordered that plaintiff be entitled to share equally in defendant's pension benefits.
 {¶ 2} The parties were married on July 1, 1978. The marriage was terminated following a hearing on March 14, 2000, and the trial court filed a judgment entry and Decree of Divorce on April 26, 2000. The divorce decree provides as follows:
13. The Defendant, Jerome Kingery is the owner of a pension plan atInternational Harvester. The Plaintiff, Jacqueline Kingery shall receiveone half (50%) of Defendant's pension which shall be distributed pursuantto a Qualified Domestic Relations Order which shall be prepared byDefendant.
Pursuant to the Divorce Decree, a QDRO was prepared and filed, which was later superseded by the Amended QDRO filed July 1, 2003. The Amended QDRO provides:
This Order assigns to [Jacqueline] fifty percent (50%) of the benefitto which [Jerome] earned and accrued from the date of marriage, July 1st,1978, to the date of the Divorce hearing, March 14, 2000. [Jacqueline]shall not share in any early retirement subsidies of supplements, whichmight be otherwise payable to [Jerome]. * * * For purposes of calculating[Jacqueline's portion of the retirement benefits], the Plan Administratoris instructed to use, if applicable, [Jerome's] average compensationand/or the benefit multiplier in effect under the plan as of[Jacqueline's] benefit commencement date.
 {¶ 3} Jerome retired from his job at International Truck and Engine Corporation on February 1, 2004. He opted for early retirement under a "window program" contained in the collective bargaining agreement between UAW, to which he was a member, and his employer. Under the program, Jerome's retirement benefit was increased by $300.00 a month to $2,350.00.
 {¶ 4} Under the terms of the 2003 Amended QDRO, Jacqueline was receiving approximately $120/month from Jerome's pension. This amounts to approximately 6% of Jerome's $2,050.00 monthly benefit absent the additional $300.00 Jerome received under the "window program." Jerome was receiving the remaining 94% of his pension benefits, as well as 100% of benefits he received for electing early retirement.
 {¶ 5} The reason for the small percentage of benefits being given to Jacqueline appears to be the language in the Amended QDRO instructing the plan administrator to use the "benefit multiplier" as of Jacqueline's benefit commencement date. Pursuant to that language, the Plan Administrator indicates that the total "accrued benefit subject to division" was $748.31, rather than the $2,050.00 in benefits Jerome was receiving, not including the additional $300.00 from participating in the "window program." Jerome testified that $748.31 was the benefit to which he would have been entitled after working 20.7 years. Jacqueline was receiving 50% of that portion, adjusted for early commencement.
 {¶ 6} On July 23, 2004 Jacqueline filed an motion to vacate the Amended QDRO and for the court to enter a Second Amended QDRO that would award her 50% of the pension benefits as prescribed in the divorce decree. Jacqueline sought to recover 50% of Jerome's total benefit, not including the $300.00 per month benefit Jerome receives pursuant to his decision to participate in the "window program." After a hearing, the trial court granted Jacqueline's motion. The court found that Jacqueline was entitled to 50% of the benefits earned during the 20.7 years Jerome was working during the marriage.[1] Pursuant to the court's December 28, 2004 judgment entry, Jacqueline was entitled to $686.75 per month based on 50% of the portion of Jerome's $2,050.00 "30-and-out" pension benefits earned during the 20.7 years of his 30 years at the company the parties were married. The court also awarded her back pension benefits totally $6,105.00. This order was executed in the December 28, 2004 Second Amended QDRO.
 {¶ 7} Jerome now appeals the decision of the trial court, asserting the following three assignments of error:
The trial court erred in granting appellee's motion for reliefunder rule 60(b) of the Ohio rules of civil procedure.
 The trial court did not follow the doctrine of res judicata in orderingthe submission of a new qualified domestic relations order when anexisting, valid qualified domestic relations order had already beenapproved and filed with the court.
 The trial court effectively and improperly allowed legal malpractice tobe the basis for the modification of the qualified domestic relationsorder.
In all three assignments of error, Jerome asserts that the trial court exceeded its authority in issuing the Second Amended QDRO. Since the issues of law are intertwined, we will address the assignments of error together.
 {¶ 8} Retirement benefits acquired during a marriage are a marital asset that must be divided equitably between the spouses in a decree of divorce that terminates the marriage. McKinney v. McKinney (2001),142 Ohio App.3d 604, 608. Once a division of property is established in the divorce decree that decision "is not subject to future modification by the court." R.C. 3105.171(I). Accordingly, the trial court lacks jurisdiction to modify the division of marital property.Gibbs v. Stanley, 2nd Dist. No. 19841, 2004-Ohio-71, ¶ 17; Strain v.Strain, 6th Dist. No. L-03-1332, 2004-Ohio-3792, ¶ 13. "However, a trial court does have the power to clarify and construe its original property division in order to effectuate its judgment." Strain, supra at ¶ 13, citing Gordon v. Gordon (2001), 144 Ohio App.3d 21, 23 (emphasis added); see also In re Dissolution of Marriage of Seders (1987),42 Ohio App.3d 155, 156 — 57. Thus, a trial court has the authority to properly clarify the meaning of a divorce decree in the event the decree is ambiguous. McKinney, 142 Ohio App.3d at 608.
 {¶ 9} When confronted with an ambiguous provision in a divorce decree, a trial court has broad discretion to clarify its judgment "by considering not only the intent of the parties but the equities involved." Borzy v. Borzy, 9th Dist. No. 3185-M, 2001-Ohio-1871, 2001 WL 1545676, at *2. Thus, a reviewing court will not reverse the decision of the trial court absent an abuse of discretion. Id. An abuse of discretion connotes more than an error of law or judgment; it indicates that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemorev. Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 10} The trial court exercises its authority to effectuate the decree by issuing a court order; retirement benefits are usually effectuated by way of a QDRO. As the Second District has stated:
A QDRO is a current distribution of the rights in a retirement accountthat is payable in the future, when the payee retires. * * * A QDRO is,therefore, merely an order in aid of execution on the property divisionordered in the divorce decree." So long as the QDRO is consistent withthe decree, it does not constitute a modification, which R.C. 3109.171(I)prohibits, and the court does not lack jurisdiction to issue it.
 McKinney, 142 Ohio App.3d at 608 (citations omitted). Accordingly, "[a] QDRO is not an independent judgment entry of the court, but rather an enforcement mechanism * * *." Himes v. Himes, 5th Dist. No. 2004AP020009, 2004-Ohio-4666, ¶ 19. Thus, because a QDRO is a court order that effectuates the allocation of rights determined in the divorce decree, the QDRO itself does not represent an adjudication of any issues of law or fact. The doctrine of res judicata is therefore inapplicable.
 {¶ 11} As was the case in McKinney, the dispute in this case is ultimately over the meaning of the provision in the divorce decree dealing with the division of retirement benefits. Whether the court had the authority to issue the Second Amended QDRO turns on whether or not the QDRO was consistent with the decree. Therefore, the only question before this court is whether or not the trial court properly exercised its authority to clarify the meaning of an ambiguous provision in a divorce decree.
 {¶ 12} An ambiguity arises "when a provision in an order or decree is reasonably susceptible of more than one meaning." McKinney,142 Ohio App.3d at 609. In the case at bar, the provision in the divorce decree stating that "Jacqueline Kingery shall receive one half (50%) of Defendant's pension" is ambiguous with regards to the treatment of early retirement benefits and the time period of accrual. It could mean that Jacqueline was entitled to receive exactly half of the total benefits going to Jerome, or it could mean half of the benefits Jerome had accrued at the time of the divorce. The trial court was required to resolve this ambiguity.
 {¶ 13} The record in this case supports the trial court's determination that the intent of the parties at the time they consented to the decree of divorce was that Jacqueline would receive 50%, and not 6%, of the retirement benefits. Both Jacqueline and her previous attorney, who acted as her attorney at the time of the divorce and the issuance of the Amended QDRO, testified that this was the parties' intent.
 {¶ 14} Jerome does not dispute that this was their intention. In fact, Jerome testified that it was his understanding, at the time of the divorce, that his retirement benefits would be "in the ballpark" of $2,000:
THE COURT: So you did not have this information [pertaining to theamounts to be divided under the Amended QDRO] in front of you at the timethat we discussed it in the original divorce proceeding?
 JEROME: Not written as such. No.
 THE COURT: Well, did you [have] a ballpark of the $2,350?
 JEROME: No, sir, I didn't back then.
 THE COURT: The $2,050?
 JEROME: I knew it was close to that, or somewhere in that ballpark.Yes.
 THE COURT: At the time of the divorce?
 JEROME: Yes. That was based on 30 years.
Thus, based on his own testimony, Jerome was generally aware of the amount of benefits he would have at the time of the retirement. He offers no evidence of his intent at the time of the divorce, with the one exception that he understood that the divorce decree did not confer any right to early retirement benefits or subsidies to Jacqueline. However, the $2,050.00 reflects his earned benefits over the course of his 30-plus-year employment, and does not include early retirement benefits.
 {¶ 15} Rather than presenting evidence of his intent at the time of the divorce, Jerome argues that he based his decision to retire on what the Plan Administrator told him his benefits would be. He testified that the Plan Administrator told him that $748.31 was the amount of benefits he would have accrued over 20.7 years — Jerome's total employment over the course of the marriage. While this statement may be accurate as to the amount of benefits actually accrued over 20.7 years, it has no relevance to what the agreement was between the parties at the time of the divorce.
 {¶ 16} This entire dispute is over whether Jacqueline is entitled to 50% of the benefits earned during the marriage or 50% of the total benefit adjusted to reflect the length of the marriage, which would have been the period of time she was under the belief that Jerome's pension benefits would go to support them both. The Plan Administrator had no knowledge of which of these two possibilities the parties had in mind at the time of the divorce. In actuality, Jerome's conversations with the Plan Administrator took place three years after the divorce proceedings, when Jerome was determining what his benefits would be at retirement. Therefore, while Jerome did base his decision to retire on the information that was given to him, there is no indication that this information took into account the intent of the parties at the time of the divorce, which is the determining factor in this case.
 {¶ 17} Based on the testimony in the record, we find that the trial court did not abuse its discretion in issuing the Second Amended QDRO to accurately reflect the parties' intent in the original division of pension benefits in the divorce decree. The provision at issue was susceptible to more than one meaning, and the trial court acted pursuant to its authority in clarifying the ambiguity. Finally, the record supports the conclusion that the December 28, 2004 judgment accurately reflects the parties' original intent. Accordingly, appellee's assignments of error are overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
 Cupp, P.J. and Rogers, J., concur.
[1] The 20.7 number for the time the parties were married during Jerome's employment is a result of several lay-offs. Although the parties were married almost 22 years, Jerome testified that he was laid off at various points during the marriage. He testified that the first year someone is laid off is credited towards the pension, but any period after one year does not accrue towards the pension. The 20.7 number was calculated by the Plan Administrator.