DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, that found appellant in contempt and ordered him to pay appellee a portion of his monthly pension benefit. For the reasons that follow, this court reverses the judgment of the trial court.
 {¶ 2} Appellant Richard Long sets forth the following as his sole assignment of error:
 {¶ 3} "I. The trial court lacked jurisdiction to order the appellant to prepare, sign and file a Division of Property Order."
 {¶ 4} The parties were married in 1958. In August 1981, appellant began accruing retirement benefits with the State Employees Retirement System ("SERS"). In May 1989, the parties filed a Petition for Dissolution of Marriage with a separation agreement attached and signed by both parties. Attached to the separation agreement, which both parties signed, was a proposed Qualified Domestic Relations Order ("QDRO") providing for the division of appellant's pension after his retirement. The parties' marriage was dissolved by Decree of Dissolution of Marriage on July 31, 1989. The separation agreement, approved by the trial court and incorporated by reference into the decree, contained the following language: "PENSION RIGHTS. The parties request that this Court approve and make as a part of the final court order, the attached Qualified Domestic Relations Order, attached as Exhibit "A", and incorporated herein by reference.Except as provided herein and in the attached Exhibit "A", eachparty releases any rights he or she may have in the vestedpension rights of the other." [Emphasis added.] Exhibit "A", the QDRO, was then forwarded to the SERS administrator. However, in a letter to the trial court, dated August 15, 1989, the state attorney general stated that pursuant to Ohio law appellant's SERS benefits were not assignable or subject to any other process of law, and requested that the trial court not approve the proposed QDRO. Accordingly, the QDRO was never signed by the trial court. The record reflects that on November 14, 1989, the parties signed an "agreement" intended to supersede the QDRO. The agreement acknowledged appellant's fully vested interest in his SERS pension plan and provided that "an undivided one-half (1/2) interest in said Plan should be set off to [appellee] as a full satisfaction of her claim from the Decree of Dissolution of Marriage." The agreement stated that appellee would either receive one-half of any lump sum distribution appellant received or one-half of all payments if he chose to receive his benefits in installments. It was signed by the parties and notarized butwas not filed with the court.
 {¶ 5} Appellant began receiving his retirement benefits in February 2003, but did not make any payments to appellee. On March 10, 2004, appellee filed a motion to show cause in which she asked the trial court to find appellant in contempt of the Decree of Dissolution of Marriage and Separation Agreement. Appellee stated appellant had been receiving installment benefits through SERS for over one year but had failed to pay her the one-half to which she was entitled. She asked the trial court to order appellant to disclose all relevant benefits information so that her attorney could prepare a Division of Property Order ("DOPO") which would allow her to receive the benefits to which she claimed she was entitled. On June 23, 2004, a hearing was held on the show cause motion. Appellant did not dispute appellee's right to a portion of his pension, but asserted that she was entitled only to one-half of the marital portion. In a decision filed August 9, 2004, the magistrate found that the court had jurisdiction over the parties and the subject matter of this action. The magistrate further found that the parties' November 1989 agreement sets forth the same terms regarding the division of appellant's pension benefits as contained in the parties' QDRO and that appellee is entitled to 50 percent of appellant's pension as the benefits are paid. Additionally, the magistrate found that half of the amount appellant had received between February 2003 and June 2004 came to $12,191.38 and that appellant had not paid any monies to appellee as her share of the benefits. The magistrate also found appellant had not presented a defense to his failure to pay any portion of his benefits to appellee. The magistrate found appellant guilty of contempt of the prior order of the court. In order to purge himself of the finding of contempt and to avoid a 30-day jail sentence, appellant was required to provide appellee's attorney with the information necessary to prepare a DOPO and then pay appellee, within 30 days, $6,095.69, which was one-half of the amount he owed her at that time.
 {¶ 6} Appellee filed objections to the decision, asserting the magistrate had failed to provide a time frame in which appellant was to pay her the remaining one-half of the amount he owed her. Appellant filed objections in which he asserted that the magistrate had not made a finding that the November 1989 agreement was an order of the court and, therefore, there was no valid order upon which to base a finding of contempt. Appellant further asserted that he presented evidence that appellee was entitled only to one-half of the marital portion of the pension, not one-half of the benefits "as the benefits are paid," as the magistrate found.
 {¶ 7} The trial court adopted the magistrate's decision and on September 14, 2004, a Division of Property Order was filed which provided for payment to appellee of $738.65 from each of appellant's periodic payments. The trial court approved the DOPO and it was journalized on September 15, 2004.
 {¶ 8} In his sole assignment of error, appellant asserts the trial court did not have jurisdiction to order him to prepare, sign and file the DOPO. Appellant argues the QDRO was a nullity because it was not signed by the trial judge and, absent a lawful order, there was no basis for finding him in contempt for failure to make payments to appellee when he began collecting his pension. Appellant concludes by arguing in the alternative that at most, appellee might have a claim to one-half of the pension benefits accrued only during the marriage, rather than one-half of all benefits accrued during the marriage and the period after the divorce.
 {¶ 9} Retirement benefits acquired during a marriage are a marital asset that must be divided between spouses as set forth in R.C. 3105.171(I). Pursuant to R.C. 3105.171(I), "[a] division or disbursement of property or a distributive award made under this section is not subject to future modification by the court." Ohio courts have held that if a divorce decree is ambiguous as to its division of a retirement plan, a trial court can properly clarify its meaning without violating the statute. See McKinneyv. McKinney (2001), 142 Ohio App.3d 604, 608, citing Weller v.Weller (1996), 115 Ohio App.3d 173, 179. However, this appeal is not from an order clarifying an ambiguity in the divorce decree but rather from a finding of contempt.
 {¶ 10} In her decision following the June 23, 2004 hearing, the magistrate found the court had jurisdiction over the parties and the subject matter of this action. The magistrate found the decree of dissolution refers to the separation agreement and the separation agreement refers to appellant's pension and the QDRO. The magistrate further found that when the parties learned the QDRO was ineffective, they drafted and signed the November 14, 1989 agreement, which set forth the same terms for division of the pension as contained in the QDRO. All of the foregoing findings are supported by the record. The magistrate then concluded that because appellant did not pay appellee her share of his pension after he began receiving the benefits and did not present any defense for his failure to pay appellee her portion, he was in contempt of a prior order of the court. The magistrate did not indicate, however, which order of the court she believed appellant had violated. This is problematic because there was noorder concerning appellant's pension at the time of the divorcesince the QDRO was ineffective. Further, there is no indication in the record that the November 1989 agreement, although signed by the parties and notarized, was ever separately filed and made an order of the court. A copy of the agreement is attached to appellee's reply to appellant's memorandum in opposition to her motion to show cause, but it is not otherwise a part of the record. For the foregoing reasons, we find the trial court erred by finding appellant in contempt and approving the DOPO that requires appellant to pay appellee one-half of his monthly pension benefits.
 {¶ 11} Accordingly, appellant's sole assignment of error is found well-taken.
 {¶ 12} Upon consideration whereof, this court finds substantial justice was not done the party complaining and the judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is reversed. This matter is remanded to the trial court for further proceedings consistent with this decision. Appellee is ordered to pay the costs of this appeal for which sum judgment is rendered against appellee on behalf of Lucas County and for which execution is awarded. See App.R. 24.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Singer, P.J., Parish, J. concur