[Cite as *Burke v. Burke*, 2011-Ohio-3723.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CHAMPAIGN COUNTY

GEARY BURKE                       :
                                 :      Appellate Case No. 2011-CA-2
        Plaintiff-Appellant      :
                                 :      Trial Court Case No. 10-DR-11
v.                               :
                                 :      (Civil Appeal from Common Pleas
CINDY BURKE                       :       Court, Domestic Relations)
                                 :
        Defendant-Appellee       :
                                 :
        · · · · · · · · · ·

### O P I N I O N

Rendered on the 29th day of July, 2011.

· · · · · · · · ·

ANDREA R. YAGODA, Atty. Reg. #0024097, 2000 Henderson Road, Suite 250, Columbus, Ohio 43220
        Attorneys for Plaintiff-Appellant

JOSEPH BADER, Atty. Reg. #0083472, Goslee & Goslee, 114 South Main Street, Post Office Box 416, Bellefontaine, Ohio 43311
        Attorney for Defendant-Appellant

· · · · · · · · ·

HALL, J.

{¶ 1}  Appellant, Geary Burke, appeals from a judgment and journal entry granting his divorce rendered by the Champaign County Court of Common Pleas, Domestic Relations Division. The Appellant contends that the trial court abused its discretion with regard to spousal support, the division of liabilities and property, and the reservation of jurisdiction to

modify the real estate and spousal support orders.

**{¶ 2}** Cindy and Geary Burke married in Las Vegas, Nevada on November 28, 2005. Due to a shoulder injury, Cindy was unemployed and had no income prior to the marriage, but she had applied for Social Security Disability. Geary received $6,819.00 gross per month from Veteran's Disability Compensation due to an automobile accident injury he suffered in 1974 while in the navy. Geary worked for a Veteran's Affairs Hospital as a counselor for veterans with disabilities. But, his prior injuries made this work increasingly difficult. Geary eventually applied for permanent disability which was approved. At the time of marriage, the State of Ohio had placed Geary on permanent disability, where he began to receive $2,528.41 net per month ($2,940.58 gross) from the Ohio Public Employee Retirement System (OPERS), in addition to the $6,819.00 he received from his Veteran's Disability Compensation. After deductions, this brought Geary's net income to $9,347.41 per month at the time he and Cindy married, although Geary was already paying $1,836.00 in spousal support to his previous wife of 27 years.

**{¶ 3}** Following marriage, Geary paid all expenses for both himself and Cindy. The couple lived in Cindy's home on West Poplar Street, in St. Paris, OH., until 2006. Then, the couple decided to purchase a new home on Country Road 5, in Zanesville, OH. When purchasing the new home, Geary is the only person who signed the mortgage note, although Cindy was listed on the deed. After purchasing this home, Geary continued to pay all expenses, including the mortgage notes and utilities for both the Poplar Street and Country Road 5 residences, as well as a new time-share he and Cindy purchased. In October, 2008, Cindy received her Social Security Disability award which included a lump sum of

approximately $28,000 of back-pay, and thereafter, she continued to receive $924.00 per month. Cindy used this lump sum to settle debt she had with her parents and improve parts of her home, but she did not give Geary any money toward their expenses or pay down her credit card debt.

{¶ 4} The parties separated on November 11, 2009, and Geary filed for a divorce on January 26, 2010 on the grounds of incompatibility. Cindy Burke filed a motion for Temporary Spousal Support on April 1, 2010, and the trial court issued a temporary order requiring Geary to pay Cindy temporary spousal support of $2,200.00 per month plus processing charges. Geary Burke failed to do so, and on May 17, 2010, Cindy filed a motion for contempt. Shortly thereafter, Geary Burke was found in contempt and sentenced to seven days in jail, although he was permitted to purge the contempt through paying the temporary spousal support. Following the divorce trial, the trail court issued the final judgment mandating the following: Geary was ordered to pay Cindy $1,836.00 per month in spousal support for one year, as well as $224.40 per month on the temporary spousal support arrearage; Geary was ordered to pay $7,500.00 on Cindy's Bank of America credit card within ninety days; the parties were to retain their separate residences; the time share was to be sold and each party would split the proceeds; and Cindy was to retain possession of a 42 inch television purchased during the marriage.

{¶ 5} In FOUR Assignments of Error, Geary Burke asserts:

{¶ 6} (I) "THE TRIAL COURT ABUSED ITS DISCRETION IN ITS DIVISION OF THE PERSONAL PROPERTY AND DEBTS OF THE PARTIES AND IN CONSIDERING EXHIBIT A TO DO SO."

{¶ 7} (II) "THE TRIAL COURT ABUSED ITS DISCRETION AND ACTED CONTRARY TO LAW IN RESERVING JURISDICTION OVER THE REAL ESTATE ISSUE."

{¶ 8} (III) "THE TRIAL COURT'S AWARD OF SPOUSAL SUPPORT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AN ABUSE OF DISCRETION AND CONTRARY TO LAW."

{¶ 9} (IV) "THE TRIAL COURT ABUSED ITS DISCRETION AND ACTED CONTRARY TO LAW IN RESERVING JURISDICTION OVER THE SPOUSAL SUPPORT ISSUE."

I

{¶ 10} "THE TRIAL COURT ABUSED ITS DISCRETION IN ITS DIVISION OF THE PERSONAL PROPERTY AND DEBTS OF THE PARTIES AND IN CONSIDERING EXHIBIT A TO DO SO."

{¶ 11} Initially, in his first assignment of error, Geary asserts that the trial court abused its discretion and acted contrary to law in using the final hearing date to determine liabilities and assets acquired "during the marriage," as opposed to using the "date of separation." " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable, or an "action that no conscientious judge could honestly have taken." *State v. Brady* (2008), 119 Ohio St.3d 375, 2008-Ohio-4493 at ¶23; *Huffman v. Hair Surgeon*, Inc. (1985), 19 Ohio St.3d 83, 87. "The mere fact that a reviewing court would have reached a different result is not enough, without more, to find error." *State v. Beechler*, Clark App. No. 09-CA-54, 2010-Ohio-1900 at ¶67.

{¶ 12} Statutorily, "during the marriage" is the time between the wedding date and the date of the final hearing in the divorce action. R.C. 3105.171 (A)(2)(a). If the court determines that using those dates would be inequitable, the court "may select dates that it considers equitable in determining marital property." R.C. 3105.171 (A)(2)(b). If a party wishes the court to do that, the party must (1) identify the other date, (2) show why its use would be more equitable, and (3) offer evidence of the value of assets to be divided on or about that date. *Rief v. Rief,* Miami App. No. 06-CA-47, 2008-Ohio-266. Appellant contends that because he did not make any financial contributions to Cindy following separation, each maintained separate bank accounts, and only the marital balance sheet containing the parties' debts at the "date of separation" was properly authenticated, the trial court abused its discretion in using the "final hearing date" to determine the distribution and valuation of liabilities. We disagree.

{¶ 13} The trial court made no determination that using the "final hearing date" would be inequitable. Also, during trial, neither party requested that the trial court utilize the "date of separation" for the distribution and valuation of liabilities. Accordingly, the trial court reasonably used the "date of marriage" and the "final hearing date" to determine what property and debt were acquired "during the marriage."

{¶ 14} Geary Burke also contends the trial court abused its discretion in failing to place values on liabilities. Again, we disagree. Although both parties had extensive credit card debt prior to the marriage, each maintained his or her own debt throughout the marriage. In determining that each party had the same credit cards they each entered the marriage with, and any credit cards opened during the marriage were in one party's name, the court sent each

party out of the marriage with his or her own debt. Both Geary and Cindy willingly accepted responsibility for the debt in their names, and neither party was required to take responsibility for any debt of the other. Although it is questionable whether Cindy Burke's marital balance sheet (Exhibit A) was fully authenticated, it is unclear whether the trial court considered Exhibit A to determine the distribution of liabilities to each party. Appellant is accurate in stating the decree does not have values for liabilities; however, the trial court does not abuse its discretion in failing to provide an explanation for this when parties in a divorce maintain separate debt throughout the marriage and agree to leave with their own debt. Despite which marital balance sheet the trial court used in determining debt acquired during the marriage, each party still accepted responsibility for paying his or her own debt. We find no abuse of discretion in regards to this distribution.

{¶ 15} Next, appellant argues the trial court abused its discretion in ordering him to pay $7,500.00 on Cindy's Bank of America credit card. We find that the trial court did not abuse its discretion with this order. According to both parties' testimony, at least some of the balance on the Bank of America credit card was marital debt acquired by both parties throughout the marriage. Moreover, while testifying on two separate occasions, Geary agreed to "help Ms. Burke out" by paying half of the remaining balance on the card. TT. P. 41, ll. 17-18. At trial, the balance on the card was approximately $17,000.00, although Geary testified to paying it down to $15,000.00 at separation. We find that ordering Geary Burke to pay $7,500.00 toward the balance of the Bank of America credit card, especially when he effectively acknowledged he would pay one half of the debt, was not unreasonable.

{¶ 16} Furthermore, appellant asserts the trial court abused its discretion in ordering

him to convey the parties' 42 inch television when the court made no findings as to the value of any of the household goods and furnishings. Both parties testified that the 42 inch television was marital property. Moreover, on cross examination, Geary testified that the television was marital property that he forgot to list in Exhibit 6. TT. P. 52, ll. 17-20. The court heard testimony that a total of four televisions were properly considered marital property. TT p. 142, ll. 15-18. In accordance with the Revised Code, "the court shall provide for an equitable division of marital property." R.C. 3105.171. Marital property is any real or personal property, or any interest in any real or personal property acquired during the marriage. Id. At the time of the hearing, Cindy had one television, while Geary had three. We find that it was not unreasonable for the trial court to order Geary Burke to give Cindy Burke the 42 inch television, leaving each party with two televisions.

{¶ 17} Lastly, in this first assignment of error, Geary asserts that the valuation of his home on Country Road 5, which he presented from the witness stand, is not conclusive as to the home's value. A trial court may only decide a case with the evidence the parties present to it. Appellant testified he thought the house was worth $250,000. TT p. 86, ll. 1-2. Although he seems to contradict that value in later testimony, TT p. 98-100, the "contradiction" was based on what a realtor told him, not his own opinion. Id. Accordingly, the trial court reasonably accepted the values the parties gave to their properties.

{¶ 18} Appellant's first assignment of error is overruled.

II

{¶ 19} "THE TRIAL COURT ABUSED ITS DISCRETION AND ACTED CONTRARY TO LAW IN RESERVING JURISDICTION OVER THE REAL ESTATE

ISSUE."

{¶ 20} In his second assignment of error, Geary Burke asserts that because the record does not contain any agreement by the parties that the court retain jurisdiction over the division of property, the trial court abused its discretion and acted contrary to law in reserving jurisdiction over the real estate. We find that the trial court's decision to reserve jurisdiction is contrary to statutory authority for division of property. Undoubtedly, a trial court can enforce its division of property order, and perhaps this is what the court intended when it stated it reserved jurisdiction over the real estate issue. In its final decree, the trial court awarded Geary the real estate on Country Road 5 and awarded Cindy the real estate on West Poplar Street. This order was consistent with the mortgage notes for each property. The home on West Poplar Street belonged to Cindy prior to and throughout the marriage. She willingly retained possession of this property and agreed to take full financial responsibility for it. Although the real estate on Country Road 5 was acquired during the marriage and had both Burkes' names on the deed, the mortgage note for that property was in Geary Burke's name alone. Accordingly, during pendency of the divorce, he willingly retained possession of this property and at the trial he agreed to take full financial responsibility for it. This property division appeared to be consistent with the parties' requests.

{¶ 21} However, with respect to each property, the journal entry states: "The court will retain jurisdiction over the real estate issue." The court could not "retain jurisdiction" over the real estate if to retain jurisdiction means reserving the ability to modify the property division. According to the Revised Code, "a division or disbursement of property or a distributive award made under this section is not subject to future modification by the court." R.C.

3105.171(I). We have held that this prohibition is jurisdictional. See, e.g., *McKinney v. McKinney* (2001), 142 Ohio App.3d 604, 608. This not-subject-to-modification provision has been amended to permit modification "upon the express written consent or agreement to the modification by both spouses." *McConnell v. McConnell*, Champaign App. No. 09-CA-43, 2010-Ohio-4757. But there is no express written consent here. If a property division order is ambiguous, the trial court may properly clarify its meaning without violating R.C. 3105.171(I). *McKinney v. McKinney* (2001), 142 Ohio App.3d 604, 608. "An ambiguity exists when a provision in an order or decree is reasonably susceptible of more than one meaning." Id. at 609. At this juncture, there does not appear to be an ambiguity. Thus, the retention of jurisdiction was contrary to law.

{¶ 22} Appellant's second assignment of error is sustained. Absent relief from the judgment in accordance with Civ. R. 60, the trial court's division of real estate is not subject to future modification.

III

{¶ 23} "THE TRIAL COURT'S AWARD OF SPOUSAL SUPPORT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AN ABUSE OF DISCRETION AND CONTRARY TO LAW."

{¶ 24} In his third assignment of error, Geary Burke contends the trial court abused its discretion with its spousal support award. "A trial court has broad discretion in establishing and modifying a spousal support award." *Dingess v. Smith,* Washington App. No. 09-CA-18, 2010-Ohio-343, citing *Cassidy v. Cassidy,* Pike App. No. 03CA721, 2005-Ohio-3199, at ¶ 27. "Thus, we will not reverse a spousal support award absent an abuse of discretion." Id. In

determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider fourteen factors expressed in R.C. 3105.18(C)(1)(a)-(n), which governs awards of spousal support. "In allocating property between the parties to a divorce and in making an award of sustenance alimony, the trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable, and in accordance with the law." *Rief,* supra, citing *Kaechele v. Kaechele* (1988), 35 Ohio St.3d 93, 97.

{¶ 25} The parties were married for four and a half years, and Cindy earns substantially less than Geary. However, Geary claims that the court erred in awarding spousal support to Cindy and that, even if spousal support was warranted, the amount of the spousal support award was unjustified. He asserts that because this is a marriage of short term, she accumulated more debt alone during the marriage and left the marriage better off than she entered it, he should not have to pay her spousal support. Furthermore, Geary contends the court abused its discretion because it failed to explain why it arrived at the amount and duration of spousal support it ordered him to pay, despite the evidence presented demonstrating that, financially, it was not feasible for him to pay that amount.

{¶ 26} The trial court awarded Cindy spousal support in the amount of $1,836.00 per month for one year, plus $224.40 per month on the temporary spousal support arrearage. It arrived at this amount by imputing income to Geary in the amount of $112,000 to $115,000 per year, which was the money he received through his Veteran's Disability Benefits and

OPERS benefits.[1] Cindy, on the other hand, received $11,088.00 per year from her Social Security Disability. The court concluded that Geary's income provided money which he could temporarily contribute to assist Cindy in transitioning out of the marriage. In arriving at this conclusion, the trial court found that since both parties were disabled, the earning capacity of each was unlikely to change. Additionally, based on Cindy's testimony and witness' testimony, the court found that during the marriage, Cindy became accustomed to a higher standard of living and would need assistance to begin living within her means. Furthermore, the trial court found that although both parties had a significant amount of debt prior to the marriage, the new standard of living led Cindy to accumulate a significant amount of additional credit card debt during the marriage.

{¶ 27} Geary asserts that the spousal support award was against the manifest weight of the evidence. If the trial court had properly weighed the evidence presented, he argues, the court would not have ordered him to pay support or he would have been ordered to pay less. During trial, Geary testified that before paying taxes and $1,836.00 per month of spousal support to his previous wife, his monthly expenses are $7,133.68. After paying all of his expenses, he has $2,300.00 of disposable income for the month. (TT p. 98 ll 14-18). Thus, granting appellee a monthly spousal support award of $1,836.00 plus arrearage charges is not economically feasible according to him.

---

[1] We are uncertain whether the spousal support award violates The Former Spouses' Protection Act (FSPA) declaring that state courts may not "treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits." Geary is already ordered to pay $1,836.00 to his former spouse. With $2,940.58 of Geary Burke's monthly income from his OPERS disability, the current spousal support award and arrearage charges, Geary will be required to pay some portion of his monthly Veteran's Disability benefit to Cindy. Thus, Geary Burke's Veteran's Disability Benefits were either considered for computation of the spousal support award or effectively assigned to Cindy Burke. However, because this issue is neither raised below nor on appeal, we decline to consider it.

{¶ 28} We find the trial court addressed each of the R.C. 3105.18(C)(1) factors that apply in the present case and the evidence relevant to those factors. We are able to glean from the court's journal entry the weight it gave to each, and on that basis we conclude that no abuse of discretion is demonstrated in the spousal support award that was ordered.

{¶ 29} Accordingly, the third assignment of error is overruled.

IV

{¶ 30} "THE TRIAL COURT ABUSED ITS DISCRETION AND ACTED CONTRARY TO LAW IN RESERVING JURISDICTION OVER THE SPOUSAL SUPPORT ISSUE."

{¶ 31} Appellant's fourth assignment of error is the trial court abused its discretion in retaining jurisdiction over the temporary spousal support order. The trial court awarded Cindy Burke temporary spousal support for one year. Geary Burke asserts because this was a marriage of short duration (less than five years) and it is unlikely either party's earning potential will significantly change within the following year, retaining jurisdiction over this issue was an abuse of discretion. We find that although the facts are unclear on whether retaining jurisdiction on the spousal support order was necessary, doing so does not constitute an abuse of discretion.

{¶ 32} "The decision [of] whether to retain jurisdiction to modify a spousal support award is within the trial court's discretion." *Seitz v. Seitz,* Champaign App. No. 2010 CA 9, 2011-Ohio-1826, citing *Board v. Board* (March 23, 2001), Clark App. No.2000 CA 42. "Although Ohio courts generally agree that a trial court abuses its discretion in failing to reserve jurisdiction when imposing an indefinite award of spousal support, the same does not

automatically apply when the court imposes a limited time period .” *Deacon v. Deacon*, Cuyahoga App. No. 91609, 2009-Ohio-2491*,* citing *Nori v. Nori* (1989), 58 Ohio App.3d 69. In determining whether a trial court's decision to retain jurisdiction over spousal support constitutes an abuse of discretion, an appellate court must consider the totality of circumstances and the specific facts of each case. Id*.*

{¶ 33} Although the determination is a fact-sensitive one, we have held that a trial court abused its discretion in failing to retain jurisdiction over a spousal support award of as little as three years, finding that an award of such a duration was “long enough to justify reservation of jurisdiction” because there was a substantial likelihood that the economic conditions of the parties would change. *Seitz*, supra*,* citing *Jackson v. Jackson* (Nov. 8, 1996), Montgomery App. No. 15795. We have also held that it is an abuse of discretion not to reserve jurisdiction to modify an award of spousal support that is to continue for a significant [or indefinite] period of time. *Dyer v. Dyer* (Jan. 22, 1992), Clark App. No. 2801; *Canales v. Canales* (March 17, 1989), Greene App. No. 88CA52; see also, *Kuper v. Halback,* Franklin App. No. 09AP–899, 2010–Ohio–3020, ¶ 62. Furthermore, other courts have found that a trial court can retain jurisdiction to set spousal support, even if no spousal support is ordered at the time of the final decree, provided that retention of jurisdiction is supported by the facts of the case. *Vona v. Vona* (Feb. 5, 2001), Stark App. No. 200 CA 40.

{¶ 34} In this case, Cindy Burke was awarded a significant award for a short period of time. Given the evidence of each party's income and expenses, we find the trial court acted within its discretion in retaining jurisdiction to modify the amount of the award if the financial circumstances of either party change within the following year.

{¶ **35**} Appellant's fourth assignment of error is overruled.

{¶ **36**} We have found that the trial court's determination to "retain jurisdiction over the real estate issue" is error. In accordance with Appellate Rule 12(A)(1)(a), we modify the judgment by deleting the retention of jurisdiction over the division of real estate. As modified, the trial court's judgment is Affirmed.

. . . . . . . . . . . . . .

DONOVAN and FROELICH, JJ., concur.


Copies mailed to:

Joseph R. Bader
Andrea R. Yagoda
Hon. Brett A. Gilbert